101 627
114 165

101 627
121 453

101 627
123 613
101 627
a128 543
d128 544

101 627
131 123

[No. 18180.   Department One.—March 15, 1894.]

# MARY V. GRIFFITH, APPELLANT, *v.* NEW YORK LIFE INSURANCE COMPANY, RESPONDENT.

LIFE INSURANCE—DESIGNATION OF BENEFICIARY.—Where an ordinary policy of life insurance designates a person to whom the insurance money is to be paid, the person who procures the insurance and who continues to pay the premiums has no authority by will or deed to change the designation of title to the moneys, without the consent of all the beneficiaries named in the policy.

ID.—NONPAYMENT OF PREMIUM—WAIVER—UNCONDITIONAL DELIVERY.—An express provision in a policy of insurance that the company shall not be liable thereon unless the premium is actually paid is waived by the unconditional delivery of the policy to the assured, as a completed and executed contract, under an express or implied agreement that a credit shall be given for a premium, and in such a case the company insuring is liable for a loss which may occur during the period of credit; but this rule does not apply where a policy is undelivered.

ID.—CANCELLATION OF UNDELIVERED POLICY.—Where the solicitor of an insurance company was willing to procure two policies for a person whose life was to be insured, and to take his notes for the premium for the first year, but in fact delivered only one of them, and with the consent of the insured declined to deliver the other policy, and returned it with a surrendered note for the premium to the company which canceled the policy, the beneficiaries named in the undelivered policy had no vested right thereto.

ID.—OBLIGATION OF INSURED PERSON—UNCOMPLETED CONTRACT.—An insured person is under no obligation to consummate a contract of insurance so as to procure a policy for a beneficiary named, and as long as it remains executory the person procuring the insurance and the insurance company may, by mutual consent, decline to complete it without consulting the beneficiaries, who would only become such upon the completion of the contract.

ID.—SURRENDER OF DELIVERED POLICY.—Where a valid policy is regularly delivered, in pursuance of a consummated contract, to one who had procured insurance upon his own life, payable to another, the insured cannot surrender the policy without the consent of the beneficiary.

ID.—PERSONAL CREDIT GIVEN BY AGENT WITHOUT AUTHORITY—NONPAYMENT OF PREMIUM NOTES—FORFEITURE.—Where the local agents of an insurance company, who are not authorized to take any thing except money in payment of premiums, consent to take notes in lieu of money, such notes must be considered, so far as the insurance company is concerned, as a payment of the premium to the agents who held the notes in lieu of so much money with which they were chargeable, and under such circumstances the nonpayment of the notes at maturity does not work a forfeiture of the policy or defeat its validity.

ID.—WAIVER OF STATUTORY PROVISIONS.—Such provisions as the law prescribes for the advantage or protection of individuals may, as a rule, be

waived by them where not inhibited by public policy; but where the object of a statute is to promote great public interests, liberty, or morals, it cannot be defeated by a private stipulation.

ID.—PUBLIC POLICY—ACT INHIBITING FORFEITURE—POWER OF INSURANCE COMPANY.—A statute of New York providing that no life insurance company doing business in that state shall have power to declare forfeited any policy except on certain conditions, is a limitation on the power of the company, and is intended, as a matter of public policy, to inhibit forfeitures of policies by life insurance companies, except as therein provided.

ID.—POWER OF CORPORATIONS—ULTRA VIRES.—That which a corporation has not the power to do, if attempted to be done by it, is *ultra vires,* and void.

ID.—WAIVER OF STATUTORY NOTICE.—The insurance company being deprived of the power to declare policies forfeited for nonpayment of premiums, except upon a notice required by the statute, the insured cannot make a valid waiver of such notice, so as to confer such power, in the face of the law which has taken it away.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. The policies referred to in the opinion were procured from E. J. Griffith, the husband of the plaintiff, on or about the 1st of June, 1889, by J. D. Mouser, as a soliciting agent for the state agents of the New York Life Insurance Company, under an agreement that Griffith should deliver to said J. D. Mouser his two certain promissory notes for the sum of $449 each, payable six months after date, for the first annual premium for the insurance, amounting in the aggregate to $898. The two policies thus solicited and procured by Mouser were number 323,792, 323,793, and were for $10,000 each. The policy number 323,792 was delivered to Griffith, who, not being financially able to pay both notes, requested Mouser to return policy number 323,793 to the company for cancellation, which was done, the note being returned canceled to Griffith on the thirtieth day of January, 1890. After the maturity of the note, Griffith, being unable to pay that note, also assumed to surrender policy number 323,792, which was canceled by the company, and the other note was returned to E. J. Griffith. No premium was paid upon either policy. The following is the statute law of New York referred

to in the opinion: "No life insurance company doing
business in this state shall have power to declare for-
feited or lapsed any policy here issued by reason of
nonpayment of premium, unless after it becomes due a
notice stating the amount of such premium, the place
where it should be paid, and the person to whom the
same is payable, shall be duly addressed and mailed to
the person whose life is assured at his last known post-
office address, postage paid by the company, and further
stating that unless the premium then due shall be paid
to the company or its agent within thirty days after
the mailing of such notice, the policy and all demands
thereon will become forfeited and void, and that in case
such payment should be made within the thirty days
limited therefor, it should be deemed a full compliance
with the requirements of the policy in respect to the
payment of premium, and that no such policy should
in any case be forfeited until the expiration of the
thirty days after the mailing of such notice." The
court found that at no time before or after the second
annual premium became due did the defendant give or
mail to E. J. Griffith or to the plaintiff the notice pro-
vided for by the above statute. Further facts are stated
in the opinion of the court.

*J. P. Meux, T. C. Van Ness,* and *L. A. Redman,* for
Appellant.

Assuming that both policies were in legal effect deliv-
ered, and were binding and valid, and were not invali-
dated by the failure to pay the second annual premiums,
there can be no doubt that the defendant is liable for
the full amount sued for, as one procuring insurance
upon his own life, payable to another, cannot surren-
der the policy without the consent of the beneficiary.
(*Pilcher* v. *New York Life Ins. Co.,* 33 La. Ann. 322;
*Trager* v. *L. E. Life Ins. Co.,* 31 La. Ann. 235; *Putnam*
v. *New York Life Ins. Co.,* 42 La. Ann. 739; *Whitehead*
v. *New York Life Ins. Co.,* 102 N. Y. 143; 55 Am. Rep.
787; *Schneider* v. *United States Life Ins. Co.,* 123 N. Y.

109; 20 Am. St. Rep. 727; *Garner* v. *Germania Life Ins. Co.*, 110 N. Y. 266 (overruling 13 Daly, 255); *New York Life Ins. Co.* v. *Ireland*, 21 Ins. Law J. 161; *Ricker* v. *Charter Oak Life Ins. Co.*, 27 Minn. 193; 38 Am. Rep. 289; *National Life Ins. Co.* v. *Haley*, 78 Me. 268; 57 Am. Rep. 807; *Harley* v. *Heist*, 86 Ind. 196; 44 Am. Rep. 285; *Timayeris* v. *Ins. Co.*, 21 Fed. Rep. 223; *Hubbard* v. *Stapp*, 32 Ill. App. 541; *Packard* v. *C. M. Life Ins. Co.*, 9 Mo. App. 469; *Bank of Washington* v. *Hume*, 128 U. S. 195.) In legal effect, under the circumstances existing in this case, the policy was executed in New York. (*Marden* v. *Ins. Co.*, 22 Ins. Law J. 147.) Furthermore it was, in effect, provided in the application, which is a part of the policy, that the place of the contract was the state of New York. It therefore appears that it was the intention of the defendant that the contract should be considered as finally executed in New York, and this being so, there was clearly, in law, a delivery, for the execution of an instrument includes delivery. (Code Civ. Proc., sec. 1933.) And whether there has or has not been a delivery depends more upon intention than the mode of fulfilling the intention. (*Hastings* v. *Vaughn*, 5 Cal. 319; *Lindsay* v. *Lindsay*, 11 Vt. 521; *Hannah* v. *Swarner*, 8 Watts, 9; 34 Am. Dec. 442; Bliss on Life Insurance, secs. 150, 153, 154; *Insurance Co.* v. *Robinson*, 25 Ind. 536.) Where the parties to a contract of insurance agree upon the subject matter and the premium to be paid, the contract is complete, although delivery of the policy and payment of premium do not take place until afterwards. (*Brownfield* v. *Phœnix Ins. Co.*, 35 Mo. App. 54; *Keim* v. *Home Mut. Fire etc. Ins. Co.*, 42 Mo. 38; 97 Am. Dec. 291; *Baldwin* v. *Ins. Co.*, 56 Mo. 151; *Bragden* v. *Appleton M. F. Ins. Co.*, 42 Me. 259; *Pino* v. *Merchants' Mut. Ins. Co.*, 19 La. Ann. 232; 92 Am. Dec. 529; *La Societe etc.* v. *Morris*, 24 La. Ann. 347.) If the terms of the contract have been agreed upon, and nothing remains to be done but to write and hand over the policy, there is a complete agreement which will support a judgment against the company, although the policy has

not been written nor premium paid. (*Harron* v. *City of London Ins. Co.*, 88 Cal. 16.) Policy No. 323,793 was completely executed, notwithstanding it was never in the physical possession of the insured. The acceptance by the company of the risk completed the contract. (Phillips on Life Insurance, sec. 24; May on Life Insurance, sec. 60; Ostrander on Life Insurance, sec. 24; Wood on Life Insurance, 2d ed., p. 49; *Wallingford* v. *Home Ins. Co.*, 30 Mo. 46; *Warren* v. *Ocean Ins. Co.*, 16 Me. 439; 33 Am. Dec. 674; *New England etc. Ins. Co.* v. *Robinson*, 25 Ind. 537; *Whitaker* v. *Farmers' Union Ins. Co.*, 29 Barb. 312; *Southern Life Ins. Co.* v. *Kempton*, 56 Ga. 339; *Fried* v. *Royal Ins. Co.*, 50 N. Y. 243; *Cooper* v. *Pacific Ins. Co.*, 7 Nev. 116; *Kentucky M. Ins. Co.* v. *Jenks*, 5 Ind. 96; *Sheldon* v. *Connecticut Ins. Co.*, 25 Conn. 223; 65 Am. Dec. 565; 11 Am. & Eng. Ency. of Law, 280; 5 Lawson's Rights, Remedies, and Practice, sec. 2044; *Goodall* v. *N. E. Ins. Co.*, 25 N. H. 192; *M'Culloch* v. *Eagle Ins. Co.*, 1 Pick. 278; *Kennebeck* v. *A. & B. Co.*, 6 Gray, 204; *Pierce* v. *Nashua Ins. Co.*, 50 N. H. 297; 9 Am. Rep. 235; *Home Ins. Co.* v. *Adler*, 71 Ala. 516.) The failure to pay the second annual premiums does not defeat plaintiff's right to recover, as the statute of New York provides that no life insurance company doing business in that state shall have power to declare forfeited any policy for non-payment of premium until after notice of such nonpayment. (*Marden* v. *Hotel Owners' Ins. Co.*, 22 Ins. Law J., 147; *De Frice* v. *National Life Ins. Co.*, 22 Ins. Law J., 112; *Baxter* v. *Brooklyn Life Ins. Co.*, 119 N. Y. 450.) This statutory requirement could not be waived by the insured. (Civ. Code, sec. 3513; *Kneettle* v. *Newcomb*, 22 N. Y. 249; 78 Am. Dec. 186; *Baxter* v. *Brooklyn Life Ins. Co.*, 119 N. Y. 450.) Assuming that Griffith could waive his rights under the statute, he had no power and no authority to waive the rights therein conferred upon the beneficiary. (*Gould* v. *Emerson*, 99 Mass. 154; 96 Am. Dec. 720.) It was not necessary that the premiums should be paid in cash before the policies became binding. Under the circumstances of this case the prepay-

ment in cash of the premium was waived. (*Elkins* v. *Susquehanna Mut. Fire Ins. Co.,* 113 Pa. St. 386; *Planters' Ins. Co.* v. *Ray,* 52 Miss. 325; *Bouton* v. *Am. Mut. Ins. Co.,* 25 Conn. 542; *Lebanon Mut. Ins. Co.* v. *Hoover,* 113 Pa. St. 591; 57 Am. Rep. 511; *Universal Fire Ins. Co.* v. *Block,* 109 Pa. St. 535; *Boehen* v. *Williamsburgh City Ins. Co.,* 35 N. Y. 131; 90 Am. Dec. 787; *Wood* v. *Poughkeepsie Mut. Ins. Co.,* 32 N. Y. 619; *Brooklyn Life Ins. Co.* v. *Miller,* 12 Wall. 285; *Farnum* v. *Phœnix Ins. Co.,* 83 Cal. 246; *Van Schoick* v. *Niagara Ins. Co.,* 38 N. Y. 440.)

*Wilson & McCutchen,* for Respondent.

Griffith, at the time that he signed the application, had actual and constructive notice of the restriction upon Mouser's authority, and that the latter was not authorized to accept notes. (Civ. Code, sec. 2318.) When the agent appears to exceed his authority, as must have been clearly apparent to Griffith at the time he signed the application, it was the duty of Griffith, exercising the caution of a business man, to inquire whether such assumed authority was duly conferred. (Wharton on Agency, secs. 137–39.) An insurance company has the power to restrict the powers and duties of its agents as it may choose, and the assured must be presumed to have knowledge of the restrictions. (Bliss on Life Insurance, pp. 483, 484; *Chase* v. *Hamilton Ins. Co.,* 20 N. Y. 52; *Geib* v. *Internal Ins. Co.,* 1 Dill. 443; *Cleaver* v. *Traders' Ins. Co.,* 8 Am. St. Rep. 9)8.) This clause is binding on the assured. (Bliss on Life Insurance, 483, 484.) Premiums, in the absence of provision to the contrary, are payable in cash. (Cooke on Life Insurance, sec. 90.) If Mouser, the solicitor of the company, was guilty of fraud in taking notes, Griffith was a party to it, for he knew that Mouser had no right to take them. When the insured is a party to the fraudulent act of the agent he cannot hold the insurer liable. (*Lewis* v. *Insurance Co.,* 39 Conn. 104.) Knowledge by the agent of the falsity of a warranty entered into by the assured will not relieve the

assured from the consequences of the breach.   (*Brown.* v. *Insurance Co.*, 18 N. Y. 387; *Jennings* v. *Insurance Co.*, 2 Denio, 75.)   Limitations upon powers of agent contained in a policy are binding on the assured.   When the policy contains such limitations, the agent has no legal right to contract with the assured so as to change the conditions of the policy, or to dispense with the performance of any essential requisite contained therein.   (*New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519; *Marvin* v. *Insurance Co.*, 85 N. Y. 278; *Holly* v. *Insurance Co.*, 105 N. Y. 437.)   The provisions for the release of an insurance company from liability on a failure to pay premium, when due, is of the very essence of the contract of life insurance.   In case of failure a court of equity will not enforce the contract.   (*Klein* v. *Insurance Co.*, 104 U. S. 88.)   Policy No. 323,793 was never delivered, as it never left the possession of the company, having been sent by mail to be delivered upon receipt of the premium.   (Bliss on Life Insurance, sec. 154; *Giddings* v. *Insurance Co.*, 102 U. S. 108; *Collins* v. *Insurance Co.*, 7 Phila. 201; *Faunce* v. *Insurance Co.*, 101 Mass. 279; *Hoyt* v. *Insurance Co.*, 98 Mass. 539.)   Punctuality in the payment of the premium in the case of a life insurance company is of the very essence of the contract, and when payment is not made at the time the company has the right to forfeit it, if such is the contract.   (*Flint* v. *Insurance Co.*, 8 Ohio, 501; *Holly* v. *Insurance Co.*, 105 N. Y., 437.)   When prepayment of the premium is made an essential part of the agreement no agent can dispense with its requirements.   (*Ormond* v. *Insurance Co.*, 96 N. C. 158; *Taylor* v. *Insurance Co.*, 47 Wis. 365; *Williams* v. *Insurance Co.*, 31 Iowa, 541; *Insurance Co.* v. *Pendleton*, 112 U. S. 696.)   The acceptance by the assured of the application does not complete the contract so as to bind the applicant until he had an opportunity to examine the policy and had assented to its terms.   (*King* v. *Insurance Co.*, 20 N. Y. Week. Dig. 203; Cooke on Life Insurance, 43, 44.)   Mrs. Griffith never acquired any vested interest in

either of the policies. The husband was the agent of the wife. She cannot claim the benefit of a contract made in her behalf, without at the same time assuming all the responsibility of a failure to perform its essential conditions. (*Schneider* v. *Insurance Co.*, 123 N. Y. 109; *Caffery* v. *Insurance Co.*, 27 Fed. Rep. 25.) Mrs. Griffith, the wife, having adopted the policies, and sued upon them, must be subject to such stipulations and conditions as were made by the husband on entering into the contract for her. (*Schneider* v. *Insurance Co.*, 123 N. Y. 109; *How* v. *Insurance Co.*, 80 N. Y. 41; *Krumm* v. *Beach*, 96 N. Y. 405; *Joliffe* v. *Insurance Co.*, 39 Wis. 115; 20 Am. Rep. 135; *Caffery* v. *Insurance Co.*, 27 Fed. Rep. 25.) No notice of nonpayment of premiums was necessary, as it was waived by the insured. This notice he had a right to waive. (*Bowen* v. *Aubrey*, 22 Cal. 566; *Bull* v. *Trustees*, 3 N. Y. 197; *Caffery* v. *Insurance Co.*, 27 Fed. Rep. 25; *Desmazes* v. *Insurance Co.*, 7 Ins. Law J., 926; *Insurance Co.* v. *Curry*, 13 Bush. 312; Sedgwick on Statutory Constitution, p. 87.) If Griffith had a right to waive the notice, the beneficiary, as well as Griffith, was bound, because the waiver constituted a part of the contract, and she was as much a party to that contract as he was. (*Schneider* v. *Insurance Co.*, 123 N. Y. 109; *Caffery* v. *Insurance Co.*, 27 Fed. Rep., 25.) In any event, the nonpayment of the notes when they matured operated as a forfeiture of the policy. (See Bliss on Life Insurance, secs. 182, 183, 186, 187; *Homer* v. *Insurance Co.*, 67 N. Y. 478.)

SEARLS, C.—This is an action by the appellant, as plaintiff, to recover from the defendant and respondent twenty thousand dollars, interests and costs, upon two twenty-year endowment policies of insurance averred to have been issued by the defendant, an insurance company, for ten thousand dollars each, to and upon the life of E. J. Griffith, loss, if any, payable to his wife, Mary V. Griffith, or in case of her death to the representatives or assigns of the insured, and in the event of his

survival for the period of twenty years to him, the said Griffith. Griffith died within two years after the policies issued, and his wife, the beneficiary named therein, is the plaintiff and appellant herein.

The policies were issued and all payments were to be made at New York, in the state of New York, where defendant is organized.

The cause was tried by the court without a jury, written findings filed and a judgment rendered thereon in favor of defendant for costs, from which judgment and from an order denying a motion for a new trial plaintiff appeals.

It is contended by the appellant: 1. That there was a perfect legal delivery of policy 793 (323,793), whereupon the right of the plaintiff as beneficiary so vested as to prevent the right of surrender upon the part of Griffith.

2. That the surrender of the policies by Griffith, without the knowledge and consent of the beneficiary, the plaintiff in this action, was void and of no effect.

3. That the nonpayment of the second annual premium does not defeat the right of plaintiff to recover.

The court finds that this policy "was never delivered by said Mouser, or anybody else, to the said Griffith, nor was said policy ever in the possession of or under the control of the said E. J. Griffith."

Counsel for appellant do not claim that the policy was ever in the physical possession of plaintiff; their contention is that there was, as appears by the other findings, a consummated contract, and that it was in *legal contemplation delivered.*

This position is assumed upon the theory that the contract was consummated, and that thereupon an interest in the policy vested in the plaintiff as beneficiary, which could not be divested by Griffith without her consent.

As a general rule, applicable to the ordinary policies of life insurance, "where the policy designates a person to whom the insurance money is to be paid, the person who procures the insurance and who continues to pay

the premiums has no authority, by will or deed, to change the designation of title to the moneys. He is under no obligation to continue to pay the premiums, unless he has covenanted so to do, but if he does so, the person originally designated in the policy will derive the benefit. The change of designation can only be made by the persons originally designated, and therefore all of such persons must concur in the change. If the policy is for the benefit of a woman and her children, the children as well as the woman must concur." (Bliss on Life Insurance, sec. 339; *Gould* v. *Emerson*, 99 Mass. 154; 96 Am. Dec. 720; *Chapin* v. *Fellowes*, 36 Conn. 132; 4 Am. Rep. 49; *Fraternal Mut. L. I. Co.* v. *Applegate*, 7 Ohio St. 292; *Ruppert* v. *Union Mut. Ins. Co.*, 7 Robt. 155.) As an apparent exception to this rule, it was held in *Bowman* v. *Moore*, 87 Cal. 306, that a change of beneficiary in a mutual benefit association, the by-laws of which provided therefor, made according to such by-laws, was a valid substitution.

Another proposition which may be considered as established is this: An express provision in a policy of insurance, that the company shall not be liable on the policy until the premium is actually paid, is waived by the unconditional delivery of the policy to the assured, as a completed and executed contract under an express or implied agreement that a credit shall be given for the premium, and in such a case the company insuring is liable for a loss which may occur during the period of credit. (*Farnum* v. *Phœnix Ins Co.*, 83 Cal. 246, and cases cited.)

These propositions are stated as prescribing limitations upon the insurers in cases where the contract is fully consummated, but do not go to the essential point in our present inquiry, viz: Was it so consummated as to bind the insurer?

Griffith desired two policies of ten thousand dollars each. The solicitor of defendant was willing to procure them and take his notes at three months for the premium for the first year.

The applications were sent to defendant at New York representing the premiums as paid in cash. The policies were fowarded to the manager in San Francisco, and by him through the general agents to the local agent at Fresno. This local agent has in the mean time become skeptical as to the solvency of Griffith, and, as he and the California agents will be held personally responsible to the company in case the notes are not paid, he delivers one of the policies, and with the consent of Griffith declines to deliver the other, surrenders the note for the premium therefor, and returns the policy in question which is canceled by the company.

Plaintiff's rights in the premises only vested when the contract was consummated. Griffith was under no legal obligation to procure the policy for her. He was to pay the premium from his own funds, and might stop short of doing so, or, having paid the first annual premium, might allow the policy to lapse for the want of payment of subsequent premiums.

The most that can be said is that, had he consummated the contract, it would have inured to the benefit of the plaintiff; and, although his acts were purely voluntary, he would have been regarded as the agent of the plaintiff in their performance, and defendant would have been estopped from denying such agency. As long as the contract remained executory, Griffith and defendant, or its agents, could by mutual consent decline to complete it, without consulting the plaintiff, who could only become a beneficiary upon its completion.

Griffith had not only represented in his statement that the first annual premium had been paid in cash, but he had also agreed in the same statement, "that any policy which may be issued under this application shall not be in force until the actual payment to, and acceptance of, the premium by said company, or its authorized agent, during my lifetime and good health."

We may concede that this agreement might have been waived by a delivery of the policy without such payment, but it by no means follows that the same re-

sult follows without a delivery, or that the agent would be legally bound to deliver without payment. In such a case it is the act of delivery with intent that it shall take effect that constitutes the waiver, and raises an estoppel against the insurer, and where the intent and act are wanting there is no waiver.

Up to the time of delivery the agreement to give credit was a mere personal one on the part of the solicitor, without authority from defendant, which he might and did cancel with the consent of Griffith before consummation of the contract.

It follows from these views that the finding of the court, that policy No. 793 (323,793) was not delivered, is one of fact, and not a conclusion of law as claimed by appellant, and that the additional facts found by the court are in harmony therewith, and, as a sequence, that the first contention of the appellant cannot be maintained.

2. Was the surrender of the other policy, 323,792, which we will designate as 792, by Griffith void as against the plaintiff?

It is conceded that this policy was delivered to Griffith and retained by him from July, 1889, to January 30, 1890, when, being unable to pay the note given by him for the first year's premium when it fell due, he requested Mouser, the local agent of defendant, to return the note to him, and that he be permitted to surrender the policy, all of which was done, and the policy returned to defendant and canceled as for want of payment of the premium.

So far as appears defendant had no knowledge of the giving of the note, except what is to be inferred by the knowledge and acts of its agents in California. The findings are full upon this branch of the case.

We think the doctrine is well settled that where a valid policy is regularly delivered in pursuance of a consummated contract, to one who has procured insurance upon his own life, *payable to another*, the insured cannot surrender the policy without the consent of the

beneficiary. (*Pilcher* v. *New York Life Ins. Co.*, 33 La. Ann. 322; *Trager* v. *L. E. Life Ins. Co.*, 31 La. Ann. 235; *Whitehead* v. *New York Life Ins. Co.*, 102 N. Y. 143; 55 Am. Rep. 787; *Schneider* v. *United States Life Ins. Co.*, 123 N. Y. 109; 20 Am. St. Rep. 727; *Garner* v. *Germania Life Ins. Co.*, 110 N. Y. 266; *Ricker* v. *Insurance Co.*, 38 Am. Rep. 289; *Insurance Co.* v. *Haley*, 57 Am. Rep. 807; *Harley* v. *Heist*, 86 Ind. 196; 44 Am. Rep. 285; *Hubbard* v. *Stapp*, 32 Ill. App. 541; *Packard* v. *C. M. Life Ins. Co.*, 9 Mo. App. 469; *Bank of Washington* v. *Hume*, 128 U. S. 195.)

We do not understand counsel for respondent to seriously combat this proposition. Their theory is that the giving of a credit was at most an extension of time for payment, and that when the promissory note of Griffith fell due and was not paid, the clause in the policy which provided that it should not take effect until payment of the premium became operative and the policy lapsed for nonpayment.

There are numerous cases reported in which policies have been held to be forfeited for nonpayment of premium notes, but so far as observed they are all cases where the insurers might, under their charters, or were accustomed to take such notes, and in which the policies provided for a forfeiture upon a nonpayment thereof.

The agents of defendant were not authorized by defendant to take any thing except money in payment of premiums. They did consent to take the note in question in lieu of money, the effect of which, according to the evidence, was that they became individually liable to defendant for so much money, less their commissions.

It was in effect, so far as defendant was concerned, a payment of the premium to the agents who held the note in lieu of so much money with which they were chargeable. It was, as to defendant, a payment of the premium to the agents, and not an extension of the time of payment. The note was payable to order, duly

indorsed, and, so far as appears, in no way referred to the premium or policy.

Under such circumstances its nonpayment at maturity did not work a forfeiture of the policy or defeat its validity. (*Lebanon Mut. Ins. Co.* v. *Hoover*, 113 Pa. 591; 57 Am. Rep. 511; *Universal Fire Ins. Co.* v. *Block*, 109 Pa. 535; *Boehen* v. *Williamsburgh City Ins. Co.*, 35 N. Y. 131; 90 Am. Dec. 787; *Brooklyn Life Ins. Co.* v. *Miller*, 12 Wall. 285; *Farnum* v. *Phœnix Ins. Co.*, 83 Cal. 246.)

3. Did the nonpayment of the second annual premium, which fell due June 1, 1890 (but upon the payment of which a grace of one month was by the terms of the policy allowed), work a forfeiture of the policy?

The law of the state of New York under which this policy issued is set out in the twelfth finding of the court, and need not be repeated. It is also found that the defendant did not give the notice as required by said statute.

In avoidance of this statute, and as a waiver of the notice there provided for, respondent relies upon the following clause in the policy:

"Notice that each and every payment of premiums is due at the date named in the policy is given and accepted by the delivery and acceptance of this policy, and any further notice required by any statute is hereby expressly waived."

The policy also provided as follows: "That if the premiums are not paid, as hereinafter provided, on or before the days when due, then this policy shall become void, and all payments previously made shall be forfeited to the company."

Such provisions as the law prescribes for the advantage or protection of individuals may, as a rule, be waived by them, where not inhibited by public policy.

"Where no principle of public policy is violated parties are at liberty to forego the protection of the law." (Sedgwick on Statutory and Constitutional Law, 109.)

Where, however, "the object of a statute is to promote great public interests, liberty, or morals, it cannot be defeated by any private stipulation." (Sedgwick on Statutory and Constitutional Law, 110; Civ. Code, sec. 3268; Code Civ. Proc., secs. 406, 434, 631; *Bowen* v. *Aubrey*, 22 Cal. 572, and cases there cited.)

In *Caffery* v. *Insurance Co.*, 27 Fed. Rep. 25, it was held in substance that where an act of the legislature provided that, upon the payment of the first premium upon a policy of life insurance, the policy shall remain in force for a certain time for the full amount thereof, "any thing in the policy to the contrary notwithstanding," the statute might be waived by the express agreement of the parties by the substitution of a nonforfeitable policy of a different character, and that, as the waiver was a part of the original contract, the beneficiary was bound by the waiver.

In *Desmazes* v. *Insurance Co.*, 7 Ins. Law J. 926, a like question was discussed, Clifford, J., using the following language:

"Nothing is contained in the statute to indicate that the legislature intended to withdraw the clear right which the insured had, outside the statute, to waive the nonforfeiture provisions, if the other party consented."

The case passed off upon a different point, and is only useful as indicating the opinion of an able jurist. There are other cases bearing more or less directly on the subject, tending to uphold the same general doctrine. It would seem, however, that the New York statute was intended to cut deeper, and as a matter of public policy to inhibit forfeitures by life insurance companies, except by the method therein provided.

"No life insurance company doing business in this state *shall have power* to declare forfeited or lapsed any policy . . . . by reason of nonpayment of premiums," etc., except as therein provided.

The statute is a limitation on the *power* of the company to do a specified thing, except under prescribed

CI. CAL.—41

conditions. That which a corporation has not the power to do, if attempted to be done by it, is *ultra vires,* and void.

Admit that Griffith attempted to waive all notice of nonpayment of premiums, if the power was lacking in the corporation to declare a forfeiture in consequence thereof it is not perceived how it can be done. The very idea of a waiver involves the right of the contracting parties to make and accept such waiver—consent never gives jurisdiction not otherwise possessed of the subject matter to a court, for the reason that it lacks the power to adjudicate such subject matter, except as conferred by law.

A corporation being the creature of the law must confine its functions to the limits prescribed for its action, and if the law expressly inhibits it from doing a given thing it is powerless to do that thing, and, if it can do it only in a given manner, the prescribed method becomes the measure of its power.

We are not met with any suggestion that the statute in question is violative of any chartered right of the defendant, and, in the absence of a showing to the contrary, must assume the New York statute to be in consonance with its constitutional and chartered rights.

The statute in question is regarded as indicative of the legislative will that, as a matter of public policy, life insurance companies should be deprived of the power to declare policies forfeited for nonpayment of premiums, except in the prescribed mode, and that being deprived of the *power* so to do, a waiver on the part of the insured cannot be construed to confer such power in the face of the law which has taken it away.

The reasons for such a policy are so numerous and obvious, that it is not deemed necessary to occupy time and space in specifying them. The conclusion is reached that, as no notice was given by defendant, the policy was not forfeited by failure to pay the annual premium which fell due June 1, 1890. It follows from these views that the judgment of the court below, so far

as applicable to policy No. 323,793, was correct, and should be affirmed; that the judgment so far as applicable to policy No. 323,792, is erroneous, and should be reversed; and, as the findings are full and complete, the court below should be directed to enter judgment in favor of plaintiff and against the defendant for the amount due upon policy No. 323,792, viz., for ten thousand dollars, and interest, less the amount of two annual premiums of four hundred and ninety-nine dollars each, and interest thereon from the date when they respectively fell due, viz., June 1, 1889, and June 1, 1890, and without costs to either party on this appeal.

HAYNES, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment of the court below in favor of defendant upon policy of insurance No. 323,793 is affirmed.   It is further adjudged that the judgment of the court below in favor of the defendant upon policy No. 323,792 be, and the same is hereby, reversed, and the court below directed to enter judgment in favor of plaintiff and against the defendant for the amount due on said policy No. 323,792, to wit, ten thousand dollars, and interest thereon, less the amount of two annual premiums of four hundred and ninety-nine dollars each, and interest thereon from the date when they respectively fell due, viz., June 1, 1889, and June 1, 1890, and that the parties pay their own costs on this appeal.

HARRISON, J., GAROUTTE, J., PATERSON, J.