[Civ. No. 3281.  Third Appellate District.—September 13, 1927.]

ROSE BLOOM, Respondent, v. PACIFIC MUTUAL LIFE
    INSURANCE COMPANY OF CALIFORNIA (a Cor-
    poration), Appellant.

420

R. S. Gray for Appellant.

Evan J. Hughes for Respondent.

PLUMMER, J.—Plaintiff had judgment in the sum of $9,284.50 upon an action instituted to recover said sum on two certain policies of life insurance alleged to have been issued by the defendant, insuring plaintiff's husband, William Wolf Bloom. The policies in question were each for the sum of $5,000 and judgment was awarded for the amount

of each policy, less the premium due thereon in the sum of \$320.25 for each policy. From this judgment the defendant appeals.

The transcript discloses the following facts: That on or about the month of April, 1923, one Stillman, acting as the agent of the defendant, and then residing in the city of Modesto, where the plaintiff then resided, interviewed the plaintiff and her husband, William Wolf Bloom, relative to the taking out of a life insurance policy by the said Bloom. After considerable negotiation the said William Wolf Bloom consented to the taking out of a policy in the sum of \$5,000. Thereupon said Stillman wrote out and submitted a written proposal to the defendant, Pacific Mutual Life Insurance Company of California, whereby the said Bloom made application for the issuance to him of a life insurance policy in said sum. The application as filled out consists of questions and answers, and was upon a form presented by the said Stillman representing himself as the agent of the defendant.

It further appears from the transcript that the negotiations were had in the office adjoining the storeroom occupied by the Blooms in the conducting of a shoe store. That during the time the negotiations were being had Mr. Bloom was waiting upon customers. That he was going into the storeroom and waiting upon customers and returning to the place where the negotiations were being conducted. That at the completion of the writing out of the answers and questions contained in the application, Mr. Bloom was called into the storeroom to wait upon a customer, and thereupon Mr. Stillman requested that the plaintiff sign the name of William Wolf Bloom to the application, by herself, and this was done.

The transcript further shows that in pursuance of the application the said William Wolf Bloom went to the defendant's medical examiner in the city of Modesto, was there examined by him, made answers to the questions propounded by said medical examiner, signed the same, and this, together with the medical examiner's report and the report of Mr. Stillman, as well as the application, was sent to the defendant at its home office in the city of Los Angeles.

It further appears that at the time these negotiations were being had and the application for a policy in the sum of \$5,000 was being written, Mr. Stillman told Mr. Bloom

that he would have another policy for an additional $5,000 prepared and issued for delivery; that he (Bloom) ought to take out insurance in the sum of $10,000. The application to which we have referred bears date of the twenty-sixth day of April, 1923, and was for an ordinary life policy. At the time of making the application just referred to the Blooms executed a promissory note for the payment of the first premium on the policy applied for in the sum of $223 and delivered the same to said Stillman. A short time after these occurrences, the said Stillman having learned that the company was preparing or issuing a different kind of policy from the one applied for, went to the Blooms and said to them: "I just found out from the company that they are not issuing these policies. They are issuing higher premium policies." He said they were $320 and some odd cents each. To this statement the record shows that both the plaintiff and Mr. Bloom replied: "That is all right."

That on about the ninth day of June, 1923, the defendant issued and forwarded to its agent in the city of San Francisco two fifteen-year endowment policies on the life of William Wolf Bloom. These policies were, by the San Francisco agent of the defendant, forwarded to Mr. Stillman in the city of Modesto. Thereafter, and on the morning of the fifteenth day of June, 1923, these policies were placed in the physical possession of William Wolf Bloom and plaintiff. The testimony of Stillman as to this particular transaction is in substance as follows: Approximately about two and one-half months later I received two policies on the fifteen-year endowment plan and a note of not accepting the noncancellable at all. In other words, that was rejected. I was having breakfast at the Hughson Hotel and Mr. Bloom then passed the window. I called his attention and showed him the policies through the window. He came into the dining-room and he asked if those were his. I told him yes, and then he said: Can I take them to show them to Mrs. Bloom? I answered yes. I finished my breakfast and followed to the store. I thought I would have a hard time in selling the insurance that was more than double the premium, and I began to explain to Mrs. Bloom what they were, and Mrs. Bloom at the time said: Come back in the evening and we will talk it over. I put the policies in my pocket, returned to my regular work, and in the afternoon I received a wire from the Pacific Mutual not to deliver the policies.

The testimony of Mrs. Bloom corroborated by witness Robishaw, concerning this occurrence is in substance as follows: "Mr. Bloom came into the store and handed me the policies. I looked at the policies and saw that they were for $5,000 with $320 premium each. I did not take the policies out of the envelope, but saw what they were by looking through the transparent covering of the envelopes in which they were contained." The language of this witness, also corroborated by Robishaw, as to what occurred when Stillman called on the Blooms after handing the policies to Mr. Bloom, is as follows: "I set the policies on my ledger. It was about half past ten or eleven o'clock that morning while I was sitting at my desk. Mr. Stillman came in and came right to my desk and talked about different things about fifteen minutes and then said: 'Mrs. Bloom, can I borrow those policies and take them down the street to show to somebody, that I have a prospective customer,' and I handed them to him and said, 'If anything should happen to Mr. Bloom is he covered?' And he said, 'He sure is.' So then I said, 'Come in tonight and get your money,' and he said, 'That is all right.' Mr. Stillman said the company would expect cash, and I said yes sir."

The transcript further shows that on or about the third day of July, 1923, the promissory note for $223 executed by the Blooms and hereinbefore referred to was returned to them by the company.

On the part of the defendant it is contended that the envelopes containing the policies also contained a certificate of health to be signed by Bloom, and also another application for insurance to be signed by Bloom personally, and that delivery of the policies and their becoming effective were dependent upon the signing of another application by Mr. Bloom, and also his signing a certificate of health. The testimony of Mrs. Bloom is to the effect that neither she nor Mr. Bloom saw either one of the papers referred to. As against this the defendant contends that these papers were inclosed in the envelopes containing the policies, and that if the Blooms had examined the contents of the two envelopes, they would have discovered these papers.

While the arguments of counsel are voluminous and many points have been made by the appellant in seeking reversal

of the judgment in this cause, only two questions are really presented. First, were the policies delivered by the agent of the company to the Blooms? Second, was that delivery conditional? Upon the question of delivery and what Stillman had said to Bloom when the policies were handed to him, or what Bloom may have said at the time of handing said policies to Bloom, the jury was entitled to take into consideration what occurred between the Blooms and Mr. Stillman when he obtained possession of the policies at a later hour during the day, in relation to borrowing the policies.

The record further shows that William Wolf Bloom died on or about the fourth day of February, 1924, and that application was made for blanks to make proof of death, etc. These were declined by the defendant on the ground of nonliability. The record also shows that probably on the fourteenth day of June, 1923, Bloom consulted a physician who was the medical examiner employed by the defendant. This physician testified first that he was consulted on the 17th of June, but later in the day testified that he had re-examined his records and ascertained that Bloom had consulted him on June 14th. However, as the record does not show that the said Bloom was afflicted with any disease at that time that caused his death or in any way could be said to impair his physical condition or render him an unfit subject for insurance, it is immaterial on what day Bloom may have consulted a physician, as there is nothing in the record which shows any connection between the cause which induced Bloom to consult the physician in the month of June, 1923, and the cause which resulted in the death of Bloom in February, 1924.

Some contention is also made that Stillman was not authorized to deliver the policies in question to the Blooms. The record shows, however, that the application for an insurance policy to be issued by the defendant was taken by Stillman as the agent of the defendant; that the medical examination of Bloom was had at the instance of Mr. Stillman, and the papers pertaining to the same were all sent by Stillman to the home office of the defendant, and that the defendant, acting upon the same, issued the policies involved in this action. It may also be stated that practically all the papers in the record produced by the defendant, as well as by the

plaintiff, bear the name of J. Stillman as agent of the defendant. The telegram sent by the defendant to Stillman to withhold the policies in question was received by him on the afternoon of June 15, 1923, after the policies had been placed in the possession of Mr. Bloom and after Mr. Stillman had called at the store to request, as testified by Mrs. Bloom and the witness Robishaw, that he might borrow the policies to show to a prospective customer. The testimony further shows that Stillman did not inform the Blooms of the telegram which he received on the afternoon of June 15, 1923, until two or three days later when request was made of him for the return of the policies. Mr. Stillman did not keep his appointment to meet the Blooms at 8 o'clock on the evening of June 15th, but telephoned to them that he had to make a trip to Stockton, some thirty miles away.

That the policies placed in the possession of the Blooms by Stillman were not so placed conditionally as contended for by the respondent is evidenced by a letter written by one L. W. Morgan, an official of the company and the manager of the company at San Francisco, transmitting the policies in question to the agent of the company at said city, and by said agent transmitted to Stillman. The letter is as follows:

"Laurence W. Morgan, Asst. Secretary
and Superintendent Policy Department
"Los Angeles, California
"June 12, 1923
"500789-90—Bloom

"Mr. Arthur C. Parsons, Mgr.,
"San Francisco, Cal.
"Dear Sir:

"We enclose herewith the above numbered policies issued on the Non Participating Fifteen Year Endowment plan without extended insurance as approved, rather than on the plan applied for. This case had the careful consideration of our Application Committee and it was decided that the plan as outlined above was the best we could offer on the life of Mr. Bloom.

"Kindly have the enclosed Certificate of Health signed and returned to the Home Office.

"Inasmuch as the application submitted is signed by Mrs. Bloom for her husband, and the Medical Report is signed

by Mr. Bloom himself, we are enclosing herewith a typed copy of the application which we must ask you to kindly have Mr. Bloom sign himself in order that our records may be complete. When the application has been personally signed, please return same to the Home Office.

"Yours very truly,

"M.G.                      "L. W. MORGAN."

The transcript further shows that the said Arthur C. Parsons referred to in this letter, upon receipt of the policies, forwarded the same to J. Stillman at Modesto with a letter couched in identical language. These letters constitute all there is in the record relative to what was desired by the company in relation to having another and additional application signed by Mr. Bloom himself and also as to Bloom signing a health certificate. The record is absolutely silent as to Bloom having been requested by the agent Stillman to sign either of said papers. Whether said papers were or were not in the envelopes at the time they were handed to the Blooms does not satisfactorily appear, but assuming that they were, there is nothing to show that the Blooms ever saw them. However, the language of the two letters which we have set forth herein establishes beyond question that the delivery of the policies was not made conditional upon the signing of either an additional application or the health certificate. The very language of the letter establishes that the company wanted at least one of the papers, to wit, the application, simply "in order that our records may be complete." These letters were admitted in evidence at the request of the defendant over the objection of the plaintiff, and while they would not be binding upon the plaintiff, having been produced and admitted in evidence at the request of the defendant, the defendant cannot very well now be heard to insist that they mean anything other or further than as stated by the express language used therein. And, as we have said, there is not a word in the letters accompanying the policies indicating to Stillman or to the Blooms that the delivery of the policies and their becoming effective was conditional upon Bloom signing either the health certificate or a new application to take the place of the one upon which the policies were issued. The record likewise shows that it was the practice of agents of the

company, upon writing a policy in the sum of $5,000, to request the writing also of a policy in an additional sum of $5,000, in the event that the insured was financially able to carry the same. That as we have stated, Mr. Stillman so informed the Blooms and the Blooms agreed thereto, in pursuance of which Stillman did indorse upon the application forwarded to the company a request for an additional insurance in the sum of $5,000 bearing a like premium rate of $320 per annum, and that the two policies were sent by Mr. Morgan, the assistant secretary and superintendent of the policy department of the defendant, to its agent at San Francisco to be forwarded to Stillman for delivery to the Blooms. It may be here stated that the policies in question were numbered 500789 and 500790, the latter of which is referred to in the testimony as the "optional policy." The testimony of Mr. Morgan upon this fact is as follows: "Q. Mr. Morgan, policies that you have identified here and marked 'Defendant's Exhibit 3,' for identification, being Policy 500789, and the policy marked 'Defendant's Exhibit 4' for identification, being 500790, were the policies that were issued on the life of William Wolf Bloom by the Pacific Mutual Life Insurance Company and sent through your San Francisco office to J. Stillman, the agent in Modesto? A. Yes, sir." In addition to this the testimony of Stillman shows that he told Bloom he had two policies and that they were his (Bloom's) policies, and that he actually gave them to Bloom. As to whether the agent Stillman delivered the policies in question to Mr. Bloom as his policies or merely to show to his (Bloom's) wife, the jury was entitled to take into consideration the testimony of Stillman as to the manner and purpose of securing repossession of said policies, as contrasted with the testimony of the plaintiff and the witness Robishaw, and if the jury believed the version given by the plaintiff and the witness Robishaw, we think they had a right to conclude that there was nothing conditional in the delivery of the policies by Stillman to Bloom at the Hughson Hotel on the morning of June 15, 1923.

As further bearing upon the question of delivery and whether the same was or was not conditional, we may further quote from the testimony of Stillman: "Q. State whether or not you received any instructions in writing at the time you

received and accompanying these two policies designated 500789 and 500790? A. I don't remember that. There might have been a letter with them saying that the company sent a fifteen-year endowment instead of ordinary life.'' It is evident from this that nothing was sent by the company to its agent at Modesto indicating an intent to make delivery conditional or calling attention of its agent to the fact that any conditional delivery was contemplated. We think the jury was entitled to conclude from this testimony and the letter accompanying the policies forwarded by the company to its agent in San Francisco, and by him forwarded to Stillman, that no conditional delivery was contemplated, and that the taking effect of the policies did not depend in anywise upon Bloom signing a health certificate or a new application to take the place of the one first forwarded to the company, even though the envelopes containing the policies also contained said papers when they were placed in the possession of the Blooms. If the jury had a right so to conclude from the testimony, then section 1626 of the Civil Code applies. This section reads: ''A contract in writing takes effect upon its delivery to the party in whose favor it is made or to his agent.'' We may also here refer to the text set forth in 14 California Jurisprudence, page 425: ''Delivery is absolute, and thereupon the policies become effective discharged of any condition upon which delivery was made.'' The text-writer in 14 California Jurisprudence, page 425, further states the rule, supported by many authorites, to wit: ''It is settled that when a contract of insurance is executed with a full knowledge of an existing fact which would render it void under a condition precedent embodied therein, the condition will be considered as waived, since otherwise it would be an unmeaning form, the only effect of which would be to deceive and defraud. It has been held, accordingly, that an express provision in a policy that the company shall not be liable until the premium is actually paid is waived by the unconditional delivery of the policy as a completed and executed contract under an express or implied agreement that a credit shall be given for the premium; and the company is liable for a loss which may occur during the period of credit.''

■ A policy is constructively delivered when, by agreement of the parties at the time of execution, it is understood

to be delivered, and under such circumstances that the insured is entitled to immediate delivery. . . . Moreover, it seems that if the insurer so far accepts the application as to prepare and forward a policy to its agent for delivery, and a payment of the premium has been made or waived or is not a condition of a policy taking effect, the contract is then complete and the insurer cannot revoke acceptance, though the policy has not been delivered. ■ Delivery is complete, therefore, when the policy is sent to the local agent to be unconditionally delivered, and though lost on the way, it is nevertheless the property of the insured." And, further, from the same volume, page 427: "The receipt of a policy purporting to embody all the terms of the contract, and the acceptance thereof by the insured, without objection, binds the acceptor as well as the insurer to the terms thereof. The insured may not thereafter be heard to say that he did not read it or know its terms, since it is his duty to read his policy, and it will be assumed that he did so."

The transcript shows that after the receipt of the policy by the Blooms, a statement was made by them to the effect that they were ready and willing to pay for both policies in full, and if the agent would be there at 8 o'clock on the evening of the day when the policies were placed in the possession of the Blooms, full payment would be made, to which the agent stated, "That is all right." It is also to be borne in mind that the defendant already had in its possession a promissory note of the Blooms in the sum of $223. ■ The fact that full payment was not made of the premiums on the two policies on the morning of June 15, 1923, under the circumstances which we have detailed, is wholly immaterial. This has been squarely decided in the case of *Griffith* v. *New York Life Ins. Co.*, 101 Cal. 627 [40 Am. St. Rep. 96, 36 Pac. 113], where it held: "An express provision in a policy of insurance that the company shall not be liable thereon until the premium is actually paid, is waived by the unconditional delivery of the policy to the assured as a completed and executed contract, under an express or implied agreement that a credit shall be given for a premium, and in such a case the company insuring is liable for a loss which may occur during the period of credit." (See, also, cases cited in 14 Cal. Jur., p. 425 et seq.)

Many definitions of what is meant by delivery are cited in 18 C. J. 478, only one of which we need quote, to wit: "A surrender of something to a person as his own property." The very first statement of Stillman in relation to the policies to Bloom, by his own testimony, is that he held up the policies for Mr. Bloom to see, and stated to him (Bloom) that they were his (Bloom's) policies.

Again, accepting the testimony of Stillman, the agent of the defendant, that the envelopes in which the policies were contained also contained an additional application for Mr. Bloom to sign to make the records of the defendant clear, as requested by them, the legal situation is unchanged. This question was presented and decided adversely to the contention of the appellant in the case of *Kahn* v. *Royal Indemnity Co.*, 39 Cal. App. 180 [178 Pac. 331]. Hearing in that case was denied by the supreme court. There the policy in question read as follows: "This policy, with a copy of the application therefor, signed by the insured, and such other papers as may be attached to, or endorsed thereon, shall constitute the entire contract between the Company and the insured." The application was not signed by the insured, and such failure was held immaterial. The policies with which we have to do read as follows: "In consideration of the application for this policy, a copy of which is attached hereto and made a part hereof," etc. The transcript shows, accepting the testimony of Stillman, that typewritten copies of Bloom's application with Bloom's name typewritten therein in the place where ordinarily the signature of the applicant would be found, accompanied the policies, and under the case which we have cited and the authorities there referred to, the application became and was a part of each policy as fully to all intents and purposes as though actually signed by Bloom.

The appellant in this case presented to the trial court a motion for nonsuit, a motion for a directed verdict, and a motion for a new trial. As grounds for a reversal herein appellant has argued these three points separately, but what we have said applies to all of said objections.

In further support of its appeal appellant alleges that the court erred in refusing to admit in evidence a letter written by the defendant to Stillman, dated June 30, 1923. Also, in refusing to permit in evidence a letter from Stillman

to the defendant returning the policies to the defendant, and a letter from the defendant's San Francisco office to Stillman, dated June 15, 1923. As to the third letter just mentioned, it refers to the fact that the defendant had issued a form of policy different from that actually applied for. As to the two other letters referred to, no authorities are cited to support the contention of appellant that private correspondence between the defendant and its agent, after the occurrence of an event, is admissible, and we assume that none can be cited, as it is self-evident that statements and letters passing between a principal and an agent in support of a defendant's contentions do not constitute evidence against a third party, though they may be admissible as admissions of a party writing the same when offered as admissions against interest.

▇ It is further urged that the trial court erred in its instructions to the jury. In this behalf our attention is specifically called to the following, given at the request of the plaintiff: "You are instructed that a witness false in one part of his or her testimony is to be distrusted in others. If you believe that any of the witnesses in this case testified falsely in any one part of his or her testimony, you have the right to distrust that witness in every other part of his or her testimony." This instruction is almost a literal repetition of subdivision 3 of section 2061 of the Code of Civil Procedure. However, in the case of *People* v. *Plyler*, 121 Cal. 160 [53 Pac. 553], it was held that the instruction given the language of the section should have added to it words incorporating the element of the witness being wilfully false upon any material part of his testimony. The case referred to, however, was not reversed upon this ground, and under subdivision 4½ of article VI of the state constitution we think that the failure of the court to embody in the instruction quoted the element of the witness being wilfully false upon a material matter would not lead to a miscarriage of justice or tend to confuse or mislead the jury.

▇ It is further urged that the court committed reversible error in refusing to give to the jury the following instruction requested by the defendant: "If you are satisfied from the evidence that the William Wolf Bloom named in the writings in evidence, known as fifteen-year endowment policies, obtained or received or was permitted to have

physical possession of them because he asked for them to show to his wife, or otherwise than as then and there becoming absolutely his property without anything further being done, he could not accept them without examining them, and any papers that may have accompanied them, and the reading by him or the plaintiff of the endorsements on the back of said policies was not sufficient in that regard, and he and the plaintiff were bound by whatever would have been learned by reasonable examination of such policies and anything that may have accompanied them." It is evident from a reading of this instruction that its refusal was proper. Besides being, in part, an invasion of the province of the jury as an instruction upon the facts, it is not supported by the testimony, as the record discloses that had Bloom and his wife examined the contents of the envelopes in which the policies were contained, as we have shown, they would not have ascertained or found anything therein indicating that any act should be done or performed by them as a condition precedent to the policies becoming effective. Under such circumstances the trial court could not do otherwise than refuse the requested instruction. The instructions set forth in the transcript are very full, and have been carefully read and examined. We find no error therein prejudicial to the appellant, but we do find that the instructions given by the trial court are slightly more favorable to the appellant than appellant was entitled to. As to the immateriality of the objection that payment of the premium was not made on the morning of June 15th, but was promised to be made in full on the evening of said day, does not affect the validity of the policies, we may cite the cases of *Raulet* v. *Northwestern Ins. Co.*, 157 Cal. 213–224 [107 Pac. 292] ; *Farnham* v. *Phoenix Ins. Co.*, 83 Cal. 246–253 [17 Am. St. Rep. 233, 23 Pac. 869] ; *Griffith* v. *New York Life Ins. Co.*, 101 Cal. 627–631 [40 Am. St. Rep. 96, 36 Pac. 113]. We do not deem it necessary to review the cases cited by appellant, for the reason that, as heretofore stated in this opinion, really but two questions are presented—delivery and acceptance of the policies. These are questions involving simply the act and intent of the parties, and the finding of the jury thereon in favor of the plaintiff appears to us to be amply justified.

The judgment of the trial court is affirmed.

Glenn, J., *pro tem.*, and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal was denied by the supreme court on November 10, 1927.