[Civ. No. 2462.  Third Appellate District.—September 27, 1922.]

GEORGE F. STEEL et al., Appellants, v. RICHARD G. THOMPSON, Respondent.

[1] LANDLORD AND TENANT — SURRENDER OF LEASE — MANNER OF. — A written agreement is not required to constitute a surrender of a lease, as it may be accomplished by operation of law.

[2] ID.—QUESTION OF FACT.—Whether in any given case there has been a surrender of a lease is a question of fact to be determined in the first instance by the trial court.

[3] ID.—FINDING—EVIDENCE—APPEAL.—The appellate court is bound by the finding of the trial court on the issue of the surrender of a lease if there is any substantial evidence in the record to sustain the finding.

[4] ID.—RECOVERY OF DEPOSIT — SURRENDER OF LEASE—QUALIFIED ACCEPTANCE—FINDING—EVIDENCE.—In this action to recover a sum of money deposited with the defendant to secure the payment of rent under the terms of the lease executed by the defendant to the plaintiff, the finding is fairly deducible from the evidence that it was understood that the defendant did not accept the surrender of the lease unqualifiedly and unconditionally, but that he would hold the plaintiff for the actual loss, making it as light as possible.

[5] ID.—RENTING OF PROPERTY FOR LESSEE'S BENEFIT—NOTICE BY LESSOR—PURPOSE OF.—The purpose of a notice to the lessee from the lessor that the property will be rented for the lessee's benefit is to furnish evidence that the lessor does not release the lessee from liability under the lease, and the same result may follow from other evidence.

APPEAL from a judgment of the Superior Court of Stanislaus County. L. W. Fulkerth, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. H. Hatton and Thomas M. Anaya for Appellants.

Hawkins & Hawkins for Respondent.

BURNETT, J.—This action was brought to recover the sum of $375 deposited by appellants with respondent to secure the payment of rent under the terms of a lease executed by the latter to the former. As stated by appellants, "the only point relied upon for a reversal of the judgment in this case is that it appears conclusively that .

there was a surrender of the lease by the tenants and an unqualified acceptance by the landlord of such surrender.'' If the last statement be true, then, as the trial court stated, the plaintiffs or appellants herein are entitled to the $375. In relation to this controverted point the trial court found: ''As to paragraph IV of plaintiff's complaint the court finds that on the seventeenth day of October, 1920, that plaintiffs vacated the said premises and left the same vacant and thereupon and thereafter surrendered to the defendant the keys to the said building but did not surrender the lease, but kept the same in their possession, and that the defendant did not accept the surrender of said lease; and did not accept the surrender of the said possession of said leased premises until after the same had been vacated and he thereupon did re-enter and take possession of said leased premises and did attempt to lease the same to other parties.'' It is claimed by appellants that this finding is entirely unsupported.

As to the principle of law involved there can be no controversy. It is clearly stated in *Baker* v. *Eilers Music Co.,* 26 Cal. App. 371 [146 Pac. 1056], as follows: ''A lease contract may be brought to an end by the surrender of the leased premises and the acquiescence in such surrender by the lessor. Such acquiescence is perhaps best evidenced by his taking possession of the property and assuming again all of the authority over it of an owner in possession. . . . A lessor who takes possession of property delivered to him by his tenant and does so unqualifiedly, thereby releases his tenant. He may accept possession of the property for the benefit of the tenant and relet the same; in the latter case he has no action except one for damages for the difference between what he was able in good faith to let the property for and the amount provided to be paid under the lease agreement. (*Bradbury* v. *Higginson,* 162 Cal. 602 [123 Pac. 797]; *Oliver* v. *Loydon,* 163 Cal. 124 [124 Pac. 731].)''

[1] Of course, it is not disputed that a written agreement is not required to constitute such surrender, as it may be accomplished by operation of law. (*Welcome* v. *Hess,* 90 Cal. 507 [25 Am. St. Rep. 145, 27 Pac. 369].)

[2] It is also the established rule that whether in any given case there has been such surrender is a question of

fact to be determined in the first instance by the trial court. (*Triest & Co.* v. *Goldstone,* 173 Cal. 240 [159 Pac. 715].)

[3] It necessarily follows that, if there is any substantial evidence in the record to sustain the finding of the trial court that there was no unqualified acceptance of the surrender by the lessor, this court is bound by said finding. In other words, if it can be said from a review of the whole record that ground exists for a rational conclusion that it was the understanding of the parties that notwithstanding the surrender of possession by the lessees they would still be held for whatever damages might accrue thereby to the lessor, we cannot interfere with the judgment although it may be opposed to our view as to the preponderance of the evidence.

[4] One consideration to which the trial court attached much importance is the unreasonableness of the position that the lessor would voluntarily release the lessees from further liability when the former had no assurance that he could secure another tenant. As the trial court declared: "To my mind, it is quite apparent that there never was any mutual cancellation of this lease. Mr. Thompson wasn't mutually giving up $125 a month rent when he had no possible, or at least no definite plan for receiving that amount of rent from anybody else under another rental . . . especially when he had a deposit of $375 to guarantee the payment of rent." The trial court was also of the opinion that if "the lease had been actually canceled and it was understood that the deposit was to be returned that it would have been a part of the agreement." Those considerations may have been entitled to some weight in the determination of the ultimate question, but as we view it they would hardly be sufficient of themselves to justify the finding. The inference, however, is strengthened by a fair construction of the testimony of Mr. Thompson, who, in reply to the question: "Well now will you state to the court your recollection of what you said about his leaving the premises?" answered: "Mr. Steel told me that he was unable to make his business pay, and I told him that it was indeed regrettable that he had to leave; I said that I hated to see anybody lose out on a deal that they got into; and we discussed the possibilities of utilizing the building,

59 Cal. App.—13

Mr. Steel informing me that he felt quite *certain that he could get another tenant;* that he had somebody in mind. I don't know who it was." Furthermore he testified: "He said: 'I have had a hard time, Mr. Thompson, and I want you to be *as easy on me as you can.'* This was in regard to the money that he had put up. And I told him that we could not do anything at this time because we did not know whether we would get it released or not. The Court: 'You mean not released, but the property leased again. A. Yes, the property leased again, the supposition being if we could get a new tenant that would pay us as much as he was paying before the expiration of the time, that this that was put up as a deposit on the lease, that undoubtedly we would be able to give some of it back to him.' '' Again, in reply to the question: "What did you tell Mr. Steel?" he answered: "That I could not do anything for him in the way of his deposit until later on, until we found out how things were coming out."

Since there was no *express* agreement as to the surrender we must, of course, arrive at the intention of the parties from their conduct and statements, and it is, assuredly, not an unfair inference from what we have related that it was understood that respondent did not accept the surrender unqualifiedly and unconditionally but that he would hold appellant for the actual loss—making it as light as possible. The parties were not required to use any particular form of expression, but it is sufficient if it may be rationally gathered from the whole transaction that the parties understood that the acceptance was qualified as we have indicated.

[5] Appellant urges the importance of a notice to the lessee from the lessor that the property will be rented for the lessee's benefit, but the purpose of such notice is to furnish evidence that the lessor does not release the lessee from liability under the lease and the same result may follow from other evidence. That such conclusion may be reached from a consideration of the whole record, we think there can be no serious doubt. It is to be supposed that these parties were not familiar with the intricacies of the law or the technical phrases that would be employed by a lawyer, but applying the usual tests to what was said

and done, we are satisfied the finding of the court is supported.

Some suggestion is made that the material allegation of the complaint as to the surrender and acceptance was not denied in the answer, but such is not the case. The second paragraph of said answer is as follows: "Defendant denies that on the seventeenth day of October, 1920, or at any other time, defendant accepted the surrender of said lease or accepted the surrender of the possession of the premises described in the complaint or re-entered or took possession of said premises or relet the same to other parties other than plaintiffs, except defendant admits that after said premises were vacated he took possession of the said premises and endeavored to lease the same to other parties as hereinafter stated."

To recapitulate: To release the lessee from liability he must surrender the property and it must be accepted unqualifiedly by the lessor. The question of whether it is so accepted is one of fact to be determined by the trial court from the whole transaction. If the possession is given up and the lessor re-enters without any agreement, express or implied, that the lessee's liability for rent is to continue, the lessee is acquitted of any further responsibility. But if it may be said from the conduct and declarations of the parties that the acceptance was conditioned that the lessee would be still liable under his contract of lease for whatever loss might be suffered by the lessor, the former may be held for the damage, notwithstanding there may be no specific admonition by the lessor to the lessee that the property will be rented for the latter's benefit. For the purpose of such notice is to furnish evidence that the lessor does not release the lessee from liability, but this condition and understanding may be shown, of course, by other evidence.

The judgment is affirmed.

Anderson, J., *pro tem.*, and Finch, P. J., concurred.