[Civ. Nos. 15092, 15272, 15273. Second Dist., Div. One.
Jan. 29, 1947.]

MIKE KRELING, Appellant, v. SAUL WALSH et al.,
Respondents.

Leo V. Youngworth, George D. Sphier and Frank P. Doherty for Appellant.

Alfred Gitelson, Sidney L. Gordon and Louis Kaminar for Respondents.

WHITE, J.—Pursuant to an order made by this court, three appeals taken from separate judgments have been consolidated and are being considered upon a single set of briefs. The record before us reveals that all three appeals are the outgrowth of a controversy arising out of a lease of a gasoline "super-service" station for the sale of gasoline and other commodities used in the operation of motor vehicles, and upon which there was conducted a going business. The property leased was located at 16th and Main Streets in the city of Los Angeles. The lease in question was executed by the defendants herein as lessors to plaintiff under date of May 10, 1941, and, under the terms thereof, the defendants demised unto plaintiff for the term of ten years and seventeen days the aforesaid improved real property. The total consideration involved in the lease transaction was $75,342.72, payable in certain stipulated monthly installments.

From the record it appears that plaintiff entered into the possession of the leased premises and was carrying on the business when a dispute arose between him and defendant lessors as evidenced by the fact that on March 6, 1942, plaintiff filed his complaint against the defendants alleging that they had falsely and fraudulently misrepresented the net profits of the business which the service station was transacting at the date of the execution of the lease. This action in the superior court was numbered 473943, and like the other actions hereinafter to be mentioned, may in this opinion be referred to by its number.

Thereafter, on April 15, 1942, defendant Walsh, his wife and defendant Ann Wooltz, commenced an action numbered 818380 against plaintiff in the municipal court of the city of Los Angeles to recover rent allegedly due and unpaid under the terms of the aforesaid lease. This action was later transferred to the superior court wherein it was numbered 476334.

By stipulation of the parties it was consolidated for trial with action No. 473943.

During the month of June, 1943, plaintiff herein filed his complaint in action numbered 483841, alleging forcible entry and unlawful detainer by defendants of said service station.

On June 12, 1943, plaintiff herein filed action No. 486038 against the above-named defendants, grounded upon the alleged conversion of personal property located in said service station.

Joint answers were interposed by the defendants in each of the foregoing actions. In general, the answers denied the allegations of the complaint to which they were filed. In case No. 476334 (brought by Walsh et al., to recover rent), the defendant therein Kreling, in addition to his answer, interposed a counterclaim embodying the claim for damages for false representations which was the basis of his claim in action No. 473943.

In addition to their answers consisting, as above noted, of denials of the allegations of the respective complaints, defendants set up an affirmative defense wherein it was alleged that all the parties to the litigation had entered into an oral agreement on January 8, 1943, and "that by the terms of said agreement, plaintiff and these defendants did compromise all claims existing on the part of these defendants as against said plaintiff and on the part of said plaintiff as against these defendants, said plaintiff forever releasing, discharging and acquitting these defendants from any obligation or liability unto said plaintiff and these defendants forever releasing, discharging and acquitting said plaintiff from any obligation or liability unto these defendants." All of the foregoing actions were set for trial and prior to the day of trial plaintiff herein gave notice that he would move the court for an order as follows:

"(1) That the trial of said action No. 483,841 (forcible entry and unlawful detainer) be immediately had.

"(2) That at the conclusion of the trial in said action No. 483,841 that the trial of the said action No. 486,038 (conversion) be had.

"(3) That at the conclusion of the trials in said actions No. 483841 and No. 486038 the trial of said action No. 473943 (fraudulent representation consolidated for trial with No. 476334 (rent)) be had.

"(4) That the evidence both oral and documentary, offered and received at the trial of said action No. 483841 be received

and considered in so far as the evidence may be competent, relevant and material in said actions No. 486038 (fraudulent representation which was consolidated for trial with action No. 476334 (rent)) and No. 473943.

"(5) That the evidence both oral and documentary, offered and received at the trial of said action No. 486038 be received and considered in so far as the evidence may be competent, relevant and material in said action No. 473943."

On the day of trial the court granted this motion and proceeded to the trial of action No. 483841 (forcible entry and unlawful detainer). Pursuant to the provisions of section 597 of the Code of Civil Procedure, the court directed that in the trial of said action the issue of the affirmative defense pleaded by the defendants be first tried. Trial of the affirmative defense then proceeded. Each party introduced evidence and rested the case insofar as it related to the issue of the affirmative defense. Upon submission of the matter, the court announced in a written opinion its decision in favor of defendants in said action and against the plaintiff herein. The findings were made in accordance with the affirmative defense, and based thereon the court in its decision held that by the oral agreement of January 8, 1943, the parties to said action had compromised and settled all their differences and that each of said parties had discharged and acquitted the other of all existing claims and obligations. Thereafter, the court made similar findings in the fraud and conversion actions and rendered judgment upon the affirmative defense in favor of defendants and against plaintiff herein.

As we have seen, the trial court in its opinion sustained the affirmative defense interposed by defendants in all the actions then pending before it; that is, held that the oral agreement was entered into by all the parties on January 8, 1943, and was a "full and complete agreement" as to all of their differences. However, in the forcible entry and unlawful detainer action No. 483841, the agreement provided that "Saul Walsh shall be entitled to possession of said station and all receipts from the sale therefrom, subsequent to this date." In construing this provision of the agreement, the trial judge held: "Now, however, I cannot help but feel the agreement provided for possession of Mr. Walsh and his associates at the time they entered escrow proceedings. The escrow was not opened or offered to be opened until the 15th of January." From the record it appears that defendant Walsh took posses-

sion of the service station on January 13. For that reason, the court held: "And, so, I will have to find that while the defendant (Walsh) has completely performed all of his obligations under the agreement, the settlement was not to be effective until the 16th of January, and so, from the 13th to the 16th of January he was in unlawful possession of the premises." No evidence having been introduced as to extent of the damage, the court continued the trial of the case for the purpose of receiving evidence on that particular issue. Upon resumption of the trial on November 29, 1943, after evidence was introduced for the purpose of proving the damage sustained by the plaintiff for the three days when defendant Walsh was unlawfully in possession of the service station after January 13, the court fixed said damage at "$25 per day or $75 for the three days" and announced its judgment in favor of defendants on their affirmative defense, except that it gave plaintiff judgment for $75 as damages for the three days' unlawful possession of the service station by defendant Walsh.

The judgments rendered by the court in all of the foregoing actions can be epitomized by saying that the court thereby held that any damages sustained by plaintiff by reason of any alleged wrongful actions upon the part of defendants had been settled and satisfied by the oral agreement of January 8, 1943. From such judgments plaintiff prosecutes these appeals.

For a clearer understanding of the grounds urged by appellant for a reversal, it becomes necessary to here epitomize the testimony received at the trial of these actions. Insofar as the evidence may be conflicting, it is axiomatic that on appeal we must consider the evidence most favorable to respondents. In accordance with that rule we feel justified in making the following statements of fact, although as to some of them there was a sharp conflict in the evidence.

When respondents filed their action to recover from appellant allegedly due and unpaid rents under the aforesaid lease, they caused a writ of attachment to issue upon the property of appellant. On January 13, 1943, pursuant to said writ of attachment, the Sheriff of Los Angeles County was holding the sum of $763.18. There was also deposited by appellant with the clerk of the superior court, subject to said writ of attachment, the further sum of $1,875, and there was also held by the Security-First National Bank of Los Angeles an additional sum of $2,684, aggregating in all the sum of $5,322.18.

When, on January 8, 1943, the consolidated actions were called for trial in the master calendar department of the

superior court and transferred for trial to department two of said court, one John R. MacFarland, a salesman for The Texaco Company, and a friend of both appellant and respondent Saul Walsh, suggested to appellant that it would be advisable for all concerned that their difficulties be "settled out of court." Appellant stated to his counsel and to Mr. MacFarland that, by reason of the advent of gasoline rationing in December, 1942, coupled with his illness, he could no longer profitably carry on the operation of the gasoline service station and desired a settlement of the pending actions, provided that such settlement would give to appellant a full release from further liability under the existing lease. It should here be said that appellant was then in default for nonpayment of several months' rent under the lease. Appellant requested his attorney to discuss with counsel for respondents a settlement of the pending actions. Thereupon, respondents' counsel, in the presence of respondent Saul Walsh and appellant Kreling, discussed with the latter's counsel terms of a proposed settlement. Respondents' counsel testified, and his testimony was corroborated by appellant's attorney, that following the discussion in the presence of appellant, his counsel and respondent Saul Walsh, "we finally arrived at an agreement whereby we agreed, first, to release Mr. Kreling from his further liability under the written indenture of lease covering the 16th and Main Street station. There was then under attachment approximately $5,200, representing the accumulation of rent unpaid under the lease, by Mr. Kreling, and attached by Mr. Walsh, as lessor; and then, under attachment, in the possession of both the clerk of the court—a portion of the $5200 or $5300, and the remainder of the $5200 or $5300 under attachment in the possession, I believe, of the Sheriff of the County of Los Angeles. Under our agreement, Mr. Walsh agreed to release payment to Mr. Kreling of 50 percent of the money which was held under attachment; agreeing to release Mr. Kreling from all further liability under the lease, and likewise agreeing to pay to Mr. Kreling an amount equal —and this was to Mr. Kreling—of the inventory put on the premises.

"Mr. Bridges (appellant's counsel) and I repeated the terms of the settlement in the presence of Mr. Graf (one of respondents' counsel) and our clients. Mr. Bridges and I agreed we would go into the courtroom of Judge Archbald, to whose department the case had been assigned, and whose de-

partment is on the eighth floor of the Hall of Records, cater-cornered from the master calendar department, where we had been before—and I might say that the conversation took place in the corridor leading to the department of the presiding judge, and then in the hallway leading to the department where Judge Archbald sat—Mr. Graf and Mr. Bridges and I then went to the courtroom of Judge Archbald and advised him in chambers that the case had been settled, and that there were to be certain releases of money held under attachment, and that we were repairing to my office to prepare those releases, covering the money under attachment. Judge Archbald thanked us, and, as I recall it, suggested that the matter go over for four or five days, to allow the preparation of the stipulation to release the moneys under attachment. Then Mr. Bridges and I went to my office.''

Appellant's attorney explained each and every term of the settlement agreement to him and the latter expressed his approval of the same. Indeed, appellant testified as follows:

''Q. Now you recall that when you left the corridor on the eighth floor in front of Department One your own mind had come to the conclusion that a settlement had been reached, isn't that right?

''A. Yes.''

And again:

''Q. No. After the meeting up there you didn't expect to go to trial?

''A. No.

''Q. You didn't expect ever to go to trial?

''A. No.

''Q. And you didn't expect after you left or at the time you left Department One, the corridor on the eighth floor, that at any time thereafter that the case against you for rents would be tried, did you.

''A. No.''

After advising the judge in department two that the cases would be settled and a continuance of trial being ordered to January 13, 1943, counsel for appellant and respondents repaired to the latter's office and jointly dictated a memorandum of the agreement of settlement had between the parties at the court house, an order addressed to the sheriff to release funds on attachment at the Security-First National Bank in action No. 618380, Municipal Court, a stipulation directed to the sheriff to deliver to respondents' attorney for them the sum

of $763.18 in superior court action No. 476334, a stipulation to the clerk of the superior court directing him to deliver to respondents' attorney for them the sum of $1,875 in superior court action No. 476334, and an assignment of lease.

Preparation of the foregoing documents was completed during the afternoon of January 8, 1943. The memorandum of the agreement of settlement was signed by respondents and the assignment of lease was signed by respondent Saul Walsh. These documents were sent by respondents' counsel to the office of appellant's attorney who, in turn, on the same afternoon, forwarded two copies of the agreement of settlement, one signed by respondents, and the letter of transmittal of the aforesaid documents from respondents, to his client, appellant herein.

On January 11, 1943, appellant appeared at the office of his attorney, informed the latter that the inventory taken of the stock was much lower than he had anticipated and that he did not believe the proposed settlement was satisfactory. Appellant's attorney told him that the settlement had already been agreed upon by appellant and himself, asked to be relieved as appellant's counsel, and delivered to the latter the files in the respective actions.

After consulting other counsel, appellant returned to the office of his former counsel on January 12 and advised the latter that "he was going through with the agreement." Appellant stated to his attorney that he could not account for some porch swings and the cash register that he had leased from the respondents. Appellant's counsel thereupon spoke with one of respondents' counsel concerning the said equipment, and it was agreed to relieve appellant from responsibility for the return of such equipment. The memorandum of agreement was then amended in that respect. Stating that, with these changes, the agreement was satisfactory, appellant signed the memorandum of agreement and the assignment of lease, and thereupon left the office of his attorney to assist in the taking of the physical inventory.

After appellant had executed the memorandum of agreement and the assignment of lease, his attorney wrote a letter to respondents' counsel, with which he enclosed the signed releases and signed stipulations in connection with the settlement, and advised counsel for respondents that appellant had signed the memorandum of agreement and the assignment of lease and was awaiting the taking of the inventory. Appel-

lant's counsel further requested that the aforesaid escrow be opened as soon as the inventory was completed.

On January 12, 1943, respondents' counsel wrote to appellant's attorney advising the latter that certain proposed amendments to the agreement were acceptable to respondents.

Following out the terms of the agreement of settlement and compromise arrived at on January 8, 1943, and the memorandum of agreement signed by appellant on January 12, 1943, the latter caused a written inventory of his personal property at the gasoline station to be taken on January 13, 1943. The inventory was taken by the aforesaid Mr. MacFarland, a representative of The Texaco Company, whose selection was agreeable to the appellant. The latter designated one of his employees to assist in the taking of the inventory and, during the course of the taking of such inventory, appellant produced invoices from different companies in order to determine the wholesale price of oils and other merchandise.

When completed, the written inventory contained an itemization and cost price of each and every article of personal property that respondents were purchasing, and was signed by appellant's employee, Mr. MacFarland, and respondent Saul Walsh, on January 13, 1943, on which date it was left with appellant. The total cost price of all the personal property represented in said inventory was the sum of $1,266.68.

On January 14, Mr. MacFarland returned to the service station, and, in the presence of himself and respondent Saul Walsh, appellant read and examined the inventory, wrote the word "approved" on the same, affixed his signature on each sheet, and delivered the document to respondents. There is also evidence that after appellant had approved and signed the inventory, he packed his private papers, gave the keys to the safe and strong box to respondent Saul Walsh, surrendered the possession of the service station and departed therefrom. At the time the inventory was taken, appellant gave respondent Saul Walsh keys to the service station. In explanation of his delivery of the keys to respondent Walsh, appellant testified, "I had no more use for them; he had another lock on the door." It is also in evidence that, at the time the inventory was taken, appellant signed a letter addressed to the Southern California Telephone Company requesting the transfer of the telephone service at the service station to respondents. Appellant also applied to the water department, electric department, gas company, and the State Board of Equalization for the re-

turn of the deposits that he had made with such companies. Accompanied by Mr. MacFarland and respondent Walsh, appellant went to the office of the War Rationing Board and there signed transfers turning over to respondent Walsh his gasoline rationing coupons.

On January 16, 1943, counsel for respondents wrote to the Security-First National Bank of Los Angeles proposing the opening of an escrow concerning the sale of the stock in trade of the gasoline station to respondent Saul Walsh from appellant, and enclosed with such letter duplicate originals of dismissal with prejudice of actions Nos. 473943 and 476334; duplicate originals of assignment of lease, signed and accepted by respondent Saul Walsh; duplicate originals of agreement of compromise signed by all respondents; duplicate originals of inventory of stock at the service station taken on January 13, 1943 and approved by appellant; and a check in the sum of $1,266.68 representing the full purchase price of the stock in trade as set forth on the aforesaid inventory. On January 18, 1943, the bank returned these various documents to respondents' counsel stating that the bank was advised that appellant's counsel had withdrawn as his attorney. On January 18, 1943, other counsel appeared in department two of the superior court and was substituted as attorney for appellant.

As his first ground for reversal, appellant contends that the evidence is insufficient to support the finding that an oral agreement of compromise and settlement was entered into between himself and respondents. Appellant's argument that the discussions outside the courtroom of department two were purely tentative, conditional and mere informal preliminary discussions to be used in formulating a later formal written agreement, is unavailing. A mere reading of the testimony hereinbefore narrated renders such an argument untenable. The agreement was so definite and certain that the parties requested a postponement of the trial on the ground that a settlement of the controversies had been agreed upon.

Appellant, however, contends that though we assume the existence of such an oral agreement, it was invalid and unenforceable because it contravened the statute of frauds in that it provided for:

(a) A bill of sale of goods valued at more than $500 (Civil Code, §§ 1624, 1624a, 1724; Code Civ. Proc., §§ 1973, 1973a);

832

(b) A surrender of an estate and interest in real property other than a lease for a term not exceeding one year (Code Civ. Proc., § 1971; Civ. Code, § 1091).

It is further urged by appellant that the alleged agreement, being one required by its terms to be in writing, his attorney, in order to make such an agreement on behalf of appellant, would have to be authorized to do so in writing. These contentions are equally unavailing. There was substantial evidence to support the court's finding that not only did appellant enter into an oral agreement of compromise and settlement, but that he later signed a contract embodying the terms of such oral agreement. Furthermore, the agreement was performed in full by appellant and respondents, save and except that the former did not withdraw his own money on deposit with the clerk of the superior court and did not enter into the escrow provided for in the agreement of settlement. ■ The statute of frauds has no application to an executed agreement (*James* v. *Hall*, 88 Cal.App. 528, 534 [264 P. 516]; *Freitas* v. *Freitas*, 31 Cal.App. 16, 19 [159 P. 611, 613]; *Bates* v. *Babcock*, 95 Cal. 479, 488 [30 P. 605, 29 Am.St.Rep. 133, 16 L.R.A. 745]). It is unnecessary to here repeat appellant's course of conduct as hereinbefore set forth, in compliance with the terms of agreement. Delivery of the stock in trade sold to respondents having been made by appellant, that portion of the agreement does not come within the purview of the statute of frauds (Civ. Code, §§ 1624, 1624a; Code Civ. Proc., §§ 1973, 1973a).

■ Neither can appellant be sustained in his claim that the surrender of the lease in the instant proceedings violated the statute of frauds. The lease herein, being for a specified term of years, is a chattel real, is personal property, and consequently is not real property or real estate (*Jeffers* v. *Easton, Eldridge & Co.*, 113 Cal. 345, 352 [45 P. 680]; *City of Santa Barbara* v. *Maher*, 25 Cal.App.2d 325, 327 [77 P.2d 306]). Leases for a definite term of years fall within the definition of personal property and are not governed by the rules applicable to real property. ■ Furthermore, in the instant cases we are confronted with substantial evidence that the leased premises were surrendered by the lessee with the acquiescence in such surrender by the lessor. And a lease contract may be brought to an end by such means (*Steel* v. *Thompson*, 59 Cal. App. 191, 192 [210 P. 430]). ■ In the state of the evidence before us it must be held that the agreement here in

question is without the statute of frauds for two reasons, viz., the terms of the oral agreement were embodied into a written memorandum of agreement and settlement, and if it be construed as an oral agreement only, the statute of frauds cannot affect it because, though it be designated as a parol contract, it was fully executed. (*Atkinson* v. *Boynton*, 111 Cal. App. 128, 130 [295 P. 352].)

Appellant next challenges the validity of the written agreement on the ground that though he signed it, appellant never delivered it to respondents. The physical transfer of a document is not indispensable to its validity. In the instant case, the court found on clear and substantial evidence that the written agreement was executed by the respective parties thereto. While section 1933 of the Code of Civil Procedure provides that "The execution of an instrument is the subscribing and delivering it, with or without affixing a seal," nevertheless, retention of an instrument by one of the parties after both have signed it is not conclusive evidence of its nondelivery. It must be considered as delivered if the parties understand it has been executed and is in operation. That delivery of an instrument is a question of intent has long been the rule in this state. If from any or all of the circumstances, appellant manifested or made known his intention to depart with his dominion and control over the instrument to the end that its terms might be put into effect, then "delivery" was sufficient and complete. We find in the record before us sufficient competent evidence upon which the trial court could base the conclusion that the conduct and acts of appellant manifested an intent to proceed in accordance with the terms of the written agreement which he had signed. That is sufficient to constitute delivery in contemplation of law though the instrument itself remained in the possession of appellant. (*Moore* v. *Trott*, 162 Cal. 268, 274 [122 P. 462]; *Chovin* v. *Miranda*, 18 Cal.App.2d 193, 195 [63 P.2d 845]; *Bloom* v. *Pacific Mut. Life Ins. Co.*, 85 Cal.App. 419, 428 [259 P. 496].)

From the foregoing it is at once apparent that appellant's contention that written authorization was required before his counsel could act for him is without merit. Appellant himself participated in the discussions out of which the oral agreement of settlement arose, and after his attorney, in conjunction with one of respondents' attorneys, had prepared a written memorandum of agreement of settlement and ex-

plained the terms thereof to appellant, the latter affixed his signature thereto and proceeded, as shown by the evidence herein set forth, to perform certain of the terms of the agreement. At the trial, appellant also testified as follows:

"Q: Then at least you considered that Gerald Bridges had from you the authority to dismiss your lawsuit in exchange for a dismissal of the lawsuit against you, as a part of the agreement that you thought you entered into that day, didn't you?

"A: Yes."

The terms of the agreement having been agreed upon by appellant, and his counsel having merely prepared the written memorandum thereof, the question of the attorney's authority to act for appellant, under the provisions of section 283 of the Code of Civil Procedure, are not involved in this appeal. Whatever substantial rights were surrendered by appellant were given up by him voluntarily, and his attorney acted only as directed by him in preparation of the written agreement of settlement to which appellant had agreed.

Appellant next asserts that the understanding between the parties was that before a contractual relationship should exist between them after their oral agreement, the terms thereof should be reduced to writing and signed by them. The answer to this contention is that the findings of the trial court, based upon competent and substantial evidence, were to the contrary. And in any event, the terms of the oral agreement were reduced to writing and appellant signed such written instrument and fully performed the same except for the withdrawal of his own money on deposit with the county clerk and entering into the proposed escrow. Furthermore, a contract to make or execute a written agreement, when in all respects the terms thereof are mutually understood and agreed upon, is as valid and obligatory where no statutory objection interposes, as the written contract would be if executed. The test is—did the minds of the parties meet; that a proposal for a contract was made by one party and accepted by another; that the parties definitely understood and agreed upon the terms of the contract; and, finally, that as a part of the mutual understanding it was agreed that a written contract embodying the terms agreed upon should be prepared and executed by the respective parties. Under such circumstances, neither party is at liberty to refuse to perform. (*Thompson v. Schurman*, 65 Cal.App.2d 432, 440 [150 P.2d 509]; *Nolte v. South-*

*ern California Home Building Co.*, 28 Cal.App.2d 532, 534 [82 P.2d 946]; *Clarke* v. *Fiedler*, 44 Cal.App.2d 838, 847 [113 P.2d 275].)

The case of *Spinney* v. *Downing*, 108 Cal. 666 [41 P. 797], and other authorities cited by appellant, go no further than to establish the rule that, when in negotiating the terms of their contract the parties agree and understand that the same shall be reduced to writing and signed by them, in order that it may become a binding and completed contract, the assent to its terms must be evidenced in the manner agreed upon. Such a situation is not here present. The evidence sustains the view of the trial court that there existed an oral agreement of settlement between the parties. That a written instrument was later made to evidence such oral agreement does not change the binding effect of the oral agreement.

 Appellant's contention that the trial court committed error amounting to an abuse of discretion by first trying the affirmative defense of settlement and compromise, which was a bar to appellant's cause of action, is without merit. In this regard, appellant asserts that the court did not follow the provisions of section 597 of the Code of Civil Procedure which provides that if the decision of the court on the special defense "is in favor of the defendant pleading the same, judgment for such defendant shall thereupon be entered and no trial of other issues in the action shall be had. . . ." Appellant claims that while the court found in favor of defendants on the special affirmative defense, it "also purported to try other issues raised by the allegations of the complaints in the forcible detainer action." But such is not the case. While the court held that the oral agreement was entered into by all the parties on January 8, 1943, and was a "full and complete agreement" as to all of their differences, it decided that the agreement provided for respondent Walsh and his associates to take possession of the service station at the time they entered escrow proceedings. That while respondent Walsh took possession on January 13, the escrow was not opened or offered to be opened until January 15; that therefore, from January 13 to January 16 respondent Walsh was in "unlawful possession of the premises." Evidence was taken only for the purpose of proving the damage sustained by appellant for the aforesaid three days when respondent Walsh was unlawfully in possession of the service station after January 13. Judgment was thereafter announced in favor of respondents

Walsh, et al., on their affirmative defense, except that judgment was awarded appellant for $75 for the aforesaid three days. Such procedure did not impinge upon the provisions of section 597 of the Code of Civil Procedure. To us this case seems a most appropriate one in which the court was justified, when the special affirmative defense would dispose of the case without a long trial, to resort to the provisions of section 597 of the Code of Civil Procedure. As was said in *Booth* v. *Bond,* 56 Cal.App.2d 153, 156 [132 P.2d 520], ''The clause of section 597 of the Code of Civil Procedure we are considering does not seem to have added a great deal to powers of courts to regulate the order of proof under the provisions of section 2042 of the Code of Civil Procedure. Under the powers granted by that section it has been held that trial courts had authority to hear special defenses that would bar a recovery by a plaintiff. (*Estate of Wickersham,* 153 Cal. 603 [96 P. 311]; *Estate of Smith,* 176 Cal. 729 [171 P. 289]; *Smeland* v. *Renwick,* 50 Cal.App. 565 [196 P. 283].)''

Appellant's attack upon the findings of fact as not being supported by the evidence cannot be sustained. It is true there was evidence contradictory to some of that narrated herein as to the circumstances surrounding the making of the agreement of settlement, as well as to appellant's conduct with reference to the written agreement, and his actions in delivering keys of the service station to respondent Walsh, making application to change the telephone listing, and for return of deposits made by him to public utility corporations. But there was also positive testimony to the contrary, as hereinbefore set forth, much of which was corroborated by other testimony which need not here be set forth.

In view of the foregoing, and where, as here, appellant challenges the judgment on the ground that the record is barren of any substantial evidence to support the same, it is well settled and firmly established in our law, as was said in *Arundel* v. *Turk,* 16 Cal.App.2d 293, 295 [60 P.2d 486], that ''When a judgment is attacked as being unsupported by the evidence, the power of the appellate court in passing on this question begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the verdict rendered by the jury; and on appeal from a judgment for defendant in an action for damages for negligence, all conflicts in the evidence must be resolved in favor of the defendant, and all legit-

imate and reasonable inferences indulged in to uphold the judgment, if possible; and when two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the jury. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183].)''

What was said by this court in *Poe* v. *Lawrence*, 60 Cal. App.2d 125, 131 [140 P.2d 136] is strikingly applicable to the case at bar: ''Legion of authority supports the statement that when an attack is made upon a judgment on the ground that it is unsupported by the evidence, the power of reviewing courts is limited to a determination of whether there is any substantial evidence, contradicted, or uncontradicted, which will support the judgment rendered. Therefore, on appeal from a judgment for plaintiffs in an action for damages for negligence, all conflicts in the evidence must be resolved in favor of the prevailing party. Because it is the rule that all intendments are in favor of the judgment arrived at upon conflicting evidence, the fact that contradictory inferences can reasonably be drawn from the facts in evidence does not authorize an appellate tribunal to substitute other inferences for those drawn by the constitutional and statutory arbiter of the facts. Of course, if the evidence is inherently improbable it may be disregarded, but before such action is warranted there must exist a physical impossibility of the evidence being true, or its falsity must be apparent without any resort to inferences or deductions (*Whitsett* v. *Morton*, 138 Cal.App. 628, 629, 630 [33 P.2d 54] ; *Arundel* v. *Turk*, 16 Cal.App.2d 293, 295, 296, 297 [60 P.2d 486]).''

Since the record herein discloses substantial evidence to warrant the trial court in finding that the parties entered into an agreement settling all of their differences and controversies which was the ultimate issue presented for decision, we cannot disturb the conclusion arrived at by the trier of facts.

The judgments and each of them must therefore be affirmed. It is so ordered.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied February 19, 1947, and appellant's petition for a hearing by the Supreme Court was denied March 27, 1947.