**BIDART BROS., a corporation, Appellant,**
v.
**UNITED STATES of America,**
**Appellee.**
**No. 15950.**

United States Court of Appeals
Ninth Circuit.

Jan. 7, 1959.

Rehearing Denied Feb. 17, 1959.

Conron, Heard & James, Calvin H. Conron, Jr., Bakersfield, Cal., for appellant.

Charles K. Rice, Asst. Atty. Gen., Louise G. Foster, A. F. Prescott, Lee A. Jackson, Attorneys, Department of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., John G. Messer, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before FEE, BARNES and HAMLIN, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal from a decision rendered against the taxpayer on his cause of action seeking a refund for income taxes paid under protest. 28 U.S.C. § 1346(a) (1); Int. Rev. Code of 1954, § 7422, 26 U.S.C. § 7422. It covers the period May 1, 1951, to April 30, 1952. Appellant sold growing crops on leased land. The land had been leased for more than six months. Plaintiff sold the growing crops and the lease to the same party in one transaction and returned the profit as long term capital gain. The Commissioner accepted the taxpayer's return showing capital gain on the sale of the farm leases; accepted the taxpayer's return listing as ordinary income the proceeds of the sale of harvested crops on the leased land, but refused to accept the taxpayer's treatment of the

proceeds of unharvested crops on leased land as capital gain. The Commissioner determined the deficiency; the taxpayer paid it; claimed a refund; and, when the claim was rejected, filed this action below.

Section 117(j) (3) of the Int.Rev.Code of 1939 provides:

"In the case of an unharvested crop on *land* used in the trade or business and held for more than 6 months, if the crop and the *land* are sold or exchanged * * * at the same time and to the same person, the crop shall be considered as 'property used in the trade or business.'" Int.Rev.Code of 1939 as amended by ch. 521, § 323(a) (2), 65 Stat. 500, 26 U.S.C.A. § 117(j) (3).

The word *"land"* above is emphasized because of its interpretation by the Government under Treasury Regulations 111, promulgated under the Int.Rev.Code of 1939, § 29.117–7, which concludes with the words: "A leasehold or estate for years is not 'land' for the purpose of this section."

Following the regulation interpreting the statute, the Commissioner held the proceeds of unharvested crops were taxable as ordinary income, because, while all other prerequisites of § 117(j) (3) had been met, the unharvested crops were on a "leasehold" and not on "land."

The sole legal question is whether the net profit from the sale of such crops must be taxed as ordinary income or as capital gain. The subsidiary question is whether a "leasehold" is "land," as that term is used in the statute. The district court held it was not.

The case was tried below on a written stipulation of facts. Thus factual issues do not exist.

The district court carefully discussed the Tax Court cases which had first met this issue,[1] and how, after the 1951 amendment adding paragraph three to subsection "j" of section 117 of the 1939 Code, the tax cases were reviewed by the fifth, tenth and ninth circuits[2] and by the Supreme Court.[3] But no cases were found on the precise question here involved, *i. e.*, is a leasehold "land"?

A discussion of the precise language used in the statute followed in the district court's opinion, and the lack of any definition therein was considered. In view of such lack of definition in the Revenue Act itself, the district court discussed the law of California, the state in which the problem arose, and concluded that leases or estates for years do not come within the term "land."[4] However, the Supreme Court has held the state definition of "land" is immaterial, Watson v. Com'r, 1953, 345 U.S. 544, 551, 73 S.Ct. 848, 852, 97 L.Ed. 1232, stating: "Whether or not the crop be real property, the federal income tax upon the gain resulting from its sale is, in its nature, a subject of federal law."

The district court then examined Senate and House reports, and the congressional debates, and found nothing which caused it to change its view as to the plain meaning of the statute.

We are in agreement with the trial court. It may be argued that when Congress enacted § 117(j) (3) in 1951, it intended to refer to "unharvested crops on land or leaseholds used * * * and

1. Watson v. Com'r, 1950, 15 T.C. 800; McCoy v. Com'r, 1950, 15 T.C. 828; Owen v. Com'r, P-H Tax Ct.Mem.Dec. ¶ 50,300.

2. Watson v. Com'r, 9 Cir., 1952, 197 F. 2d 56; Owen v. Com'r, 5 Cir., 1951, 192 F.2d 1006, McCoy v. Com'r, 10 Cir., 1951, 192 F.2d 486.

3. Watson v. Com'r, 1953, 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232. See also, Dakin, The Capital Gains Treasure Chest: Rational Extension or Expedient Distortion?, 14 La.L.Rev. 505, 516 (1954); Halstead, Sales of Land With Growing Crops—Tax Treatment, 31 Taxes 55 (1953); Hill, Ordinary Income or Capital Gain on the Sale of an Orange Grove?, 4 Miami L.Q. 145 (1950); Comment, Farmers and the Federal Income Tax, 19 U.Chi.L.Rev. 522, 530 (1952).

4. Kreling v. Walsh, 1947, 77 Cal.App.2d 821, 832, 176 P.2d 965. See also, Dabney v. Edwards, 1935, 5 Cal.2d 1, 53 P. 2d 962, 103 A.L.R. 822; Potts Drug Co. v. Benedict, 1909, 156 Cal. 322, 104 P. 432, 25 L.R.A.,N.S., 609.

held * * *" etc. But it did not say so. It said "on land." Had it intended to apply to crops on land, whether fee or leasehold, it would have been an easy thing to have said so. Or it could have granted the farmer capital gain treatment on all crops; or all unharvested crops, had this been its intention. But it enacted a law, not applicable to all unharvested crops sold, but only on unharvested crops on land held more than six months, and sold or exchanged at the same time and to the same person.

Appellant earnestly urges that the lower court's decision interprets "land" to mean "fee land"; that this is adding to the statute, which courts may not do—they may interpret, but not legislate. Whether we rule that the term "land" *excludes* leaseholds, as the government urges, or *includes* leaseholds, as appellant urges, it seems to us we are asked to do precisely the same thing, i. e., interpret the word used. Each side asserts the term, as used in the statute and undefined therein, must be interpreted; but each in its way and to its own advantage.

Appellant likewise emphasizes the "hardship, injustice, confusion, contradiction, absurdity and wholly unreasonable result" because of the district court's decision, putting tenant farmers in one category and fee land farmers in another.

In interpreting, which we feel we must do in any event, we are constrained to keep in mind several things. The first is that capital gain tax treatment is not a matter of right, but of legislative grace. The Congress provides for it, and however little or much relief is given from taxes payable on ordinary income, the taxpayer must accept. As the district court said: "If inequities exist, such inequities must be corrected by Congress and not by judicial legislation." [157 F.Supp. 158.]

The second factor we must remember is that the Supreme Court has told us that "in order for such income (unmatured crops) to be a capital gain, an affirmative statement by Congress was

needed." Watson v. Com'r, supra, 345 U.S. at page 548, 73 S.Ct. at page 851.

The somewhat analogous matter of whether gains from hedging transactions could be considered by the taxpayer as capital gain rather than ordinary income was before the Supreme Court in Corn Products Refining Co. v. Com'r, 1955, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29. That case involves commodities and not land, but does interpret § 117 of the Int.Rev.Code of 1939. The Court there said:

"[T]he capital-asset provision of § 117 must not be so broadly applied as to defeat rather than further the purpose of Congress. Burnet v. Harmel, 287 U.S. 103, 108, 53 S.Ct. 74, 76, 77 L.Ed. 199. Congress intended that profits and losses arising from the everyday operation of a business be considered as ordinary income or loss rather than capital gain or loss. The preferential treatment provided by § 117 applies to transactions in property which are not the normal source of business income. It was intended 'to relieve the taxpayer from * * excessive tax burdens on gains resulting from a conversion of capital investments, and to remove the deterrent effect of those burdens on such conversions.' Burnet v. Harmel, 287 U.S. at page 106, 53 S.Ct. at page 75. Since this section is an exception from the normal tax requirements of the Internal Revenue Code, the definition of a capital asset must be narrowly applied and its exclusions interpreted broadly. This is necessary to effectuate the basic congressional purpose. This Court has always construed narrowly the term 'capital assets' in § 117. See Hort v. Commissioner, 313 U.S. 28, 31, 61 S.Ct. 757, 758, 85 L.Ed. 1168; Kieselbach v. Commissioner, 317 U.S. 399, 403, 63 S.Ct. 303, 305, 87 L.Ed. 358, 350 U.S. at page 52, 76 S.Ct. at page 24.

Surely the net proceeds of the sale of a farmer's harvested crops ordi-

narily are ordinary income. Did Congress without question intend to permit the sale of unharvested crops growing on any leasehold, and no matter what the value of that leasehold might be as compared to the value of the crops themselves, and whether the sale occurs a day or a week or a month before harvest time to change ordinary income to capital gain? Did Congress intend to permit a farmer, if he wills, to change ordinary income into a capital gain by a simple contractual transaction? We think not.

We recognize in this case, as the trial court also recognized, that the sale was made in good faith; the leases had several years to run; and appellants were retiring from the farming business. Furthermore, the amount received for the leases was *more* than the gain on the sale of the growing crops.[5] Yet (and this is the third factor we must keep in mind) we must consider the general effect of any interpretation here enunciated, as well as the consequences of the interpretation in the specific matter before us.[6]

As to the claimed "unfairness" existing in the peculiar circumstances of this case, the farmer who sells his unharvested crop when he sells his land held in fee simple, but has held it *less* than six months, is also treated "unfairly" in comparison to the same farmer who has held it *more* than six months. And so is the farmer who sells his unharvested crop to one person and his fee simple land to another person, even though the land has been held *more* than six months. Yet in both cases his claim of unfairness rests on his failure to bring his transaction within the provisions of the statute, which the Congress, in its wisdom, has seen fit to make the law of this land.

There are many reasons in equity why this appellant should be entitled to receive the same tax treatment on the sale of growing crops on "leased land" as the taxpayer who sells growing crops on "land" he owns outright. But the Congress, in exercising its grace, has not yet clearly gotten around to accomplishing that. And we cannot do it for the Congress.

The judgment of the district court is affirmed.

---

5. Gain on farm leases, $244,925.73; gain on sale of growing crops, $237,954.56.

6. Suppose two farmers owning comparable adjoining 40 acre tracts, each growing the same crop, should each lease his field to his neighbor, and sell the unharvested crops, plus the leasehold, each to the other, or both to a third farmer, just before harvest. Could the Congress have intended to permit such a transaction to convert ordinary income to capital gain? If so, would it not have been simpler to exempt all farmers from payment of taxes on ordinary income from farming operations, and merely tax farmers on a capital gains basis?