# BLOCK v. McLAUGHLIN (No. 2).

No. 61-C-13703.

Circuit Court, Dade County
May 23, 1962.

Lemelman & Lehrman, Miami, for plaintiff.

Richard F. Ralph, Miami, for defendant.

PHILLIP GOLDMAN, Circuit Judge.

The parties by written stipulation dated March 14, 1962, submitted this cause to the court on affidavits, depositions and briefs. On a base of these documents the court finds and concludes as follows—

### Findings of Fact

On December 7, 1961, defendant McLaughlin's attorney, Richard F. Ralph, telephoned plaintiff's attorney, Fred R. Stanton of the law firm of Copeland, Therrel, Baisden and Peterson. Ralph told Stanton that the two would soon meet to work out a contract for Mrs. McLaughlin to purchase a residence on Allison Island from Mrs. Block.

On December 11, 1961, Ralph brought to Stanton's office an original and two copies of a proposed contract of purchase which Ralph had drafted over the weekend. Stanton approved the contract as proposed after study and discussion with Ralph. The contract among other things included the following provisions— "This agreement shall be binding upon both parties, and their heirs, executors, administrators or assigns, as soon as both parties have duly executed and acknowledged duplicate originals thereof and each party has delivered to the other a duplicate original bearing his execution and acknowledgement."

At the time Stanton and Ralph agreed on the form of the proposed agreement Mr. and Mrs. Block sat in the office with them. Mrs. McLaughlin, however, did not attend the meeting as she was a member of the Trujillo family and desired to keep her identity secret. Mr. and Mrs. Block signed the contract in Stanton's office at the meeting. Ralph then stated that he would take the signed contracts immediately to his office and get Mrs. McLaughlin to execute two copies of the contract and a check for $15,000 payable to Stanton's law firm (designated by the

proposed contract as the escrow agent). Ralph stated that Stanton need not go to Ralph's office to accept delivery of Mrs. Block's copy of the contract and the $15,000 check; that Ralph would put an executed copy of the contract and the check in the mail that very afternoon and that Stanton would receive the contract and the check in the mail the next morning, December 12, 1961. Stanton then delivered duplicate originals of the contract to Ralph. Ralph returned to his office and got Mrs. McLaughlin to execute the duplicate originals of the contract and the $15,000 check.

Mrs. McLaughlin clearly understood when she handed the contracts and the check to Ralph that she was "entering into an agreement to buy and sell the property."

That same afternoon of December 11th Ralph called Stanton and said that Mrs. McLaughlin had signed the contracts and the escrow check and that he would send Stanton one of the duplicate originals of the contract and the escrow check. Ralph also brought up for the first time a couple of alleged title clouds and asked Stanton to supply certain documents to clear them. *Since the contract fixed the obligations and rights of the parties in respect to title clouds (as well as other things) Ralph was claiming benefits which could spring only from the contract when he demanded of Stanton documents to clear title.* Stanton agreed to get the documents.

When the contract and the check failed to reach Stanton's office on the morning of December 12 Stanton telephoned Ralph who acknowledged that he had not sent the contract and the check. He stated that he would physically deliver the contract and the check to Stanton by 3 P.M. But for the first time Ralph told Stanton the contract and check would be handed over only if Stanton had ready for him at 3 P.M. the title clearance documents he had already demanded plus some others now demanded. Stanton pointed out to Ralph that the existence of the contract did not depend on title clearance; that the contract called for title clearance after execution, not before. Nevertheless, Stanton had the papers ready for Ralph that afternoon when Ralph came to Stanton's office. But Ralph promptly raised another title question. Again he refused to hand over the contract and the check and departed the office with them.

On December 13, 1961, by letter Ralph demanded of Stanton's firm six documents for title clearance and a "modification of the agreement." The deadline on this demand was 10 A.M. on December 15, 1961. Ralph assured Stanton's firm that he would

physically hand over the check and the contract when these latest title clearance demands were met. Then orally on the afternoon of December 14, 1961, Ralph agreed that the parties would close the deal at the 10 o'clock meeting the next morning. Promptly at 10 on December 15 Ralph met with Baisden of Stanton's firm and commenced to close the deal. Baisden satisfied Ralph on all title clearance matters except the form of a disclaimer pertaining to a dock on the waterfront at the property. Ralph objected to the form of Baisden's disclaimer because in Ralph's own words " . . . Mr. Baisden did not have such form of quit claim deeds or other suitable instruments *as were called for by the proposed form of purchase agreement* in connection with the dock encroachment on the waterfront . . . " (Emphasis supplied). When it became apparent that Baisden and Ralph could not immediately agree on the form for a disclaimer, Ralph offered to trade Baisden physical possession of the contract and the check in return for physical possession of the six papers Ralph had demanded in his letter of December 13. When Baisden refused, Ralph left the office. Shortly afterward, Ralph notified Stanton's firm by letter that the deal was off "in view of your announced repudiation of said agreement in a material respect, to wit, that under no circumstances would you comply with the requirement in the agreement that the seller provide to us the quit claim deeds or other suitable instrument called for by the agreement in connection with the dock encroachment on the waterfront."

The court is satisfied that a contract came into being on the afternoon of December 11, 1961, and that thereafter either party could have maintained an action on it in the event of breach. The buyer delivered the contract to the seller within the meaning of the contract on the afternoon of December 11 when Alma McLaughlin signed and physically delivered a duplicate original of the contract and the escrow check to Ralph with the admitted intent to enter into a contract. Ralph took possession of the duplicate original and the check as custodian for the seller and had no right to withhold the documents as a bargaining club against the seller. By demanding benefits of the contract such as the precise documents set forth in the contract concerning dock encroachment, defendant estopped herself from questioning the existence or validity of the contract. Further defendant by appearing and participating in the closing meeting waived any right to claim physical delivery from Ralph to Stanton's firm as a condition precedent to the contract. In fact defendant's very letter announcing that the deal was off is premised upon the existence of the agreement which defendant contends plaintiff repudiated.

## Conclusions of Law

One need not physically place an article in the hands of another in order to deliver it. Delivery of an instrument is a question of intent which is determined from all the attendant circumstances. Handley v. Guasco, Calif., 332 P.2d 354; Kreling v. Welsh, Calif., 176 P.2d 965.

The agent of one party to a contract may become the custodian of the contract for the benefit of the other party and, if this happens, physical delivery from the first party to his own agent constitutes delivery to the second party sufficient to breathe life into the contract. Carr v. Howell, Calif., 97 P. 885; Huse v. Reed, Md., 146 A. 579; Eastman v. De Frees, et al, Iowa, 17 N.W. 104.

A person may be estopped from questioning the existence, validity and effect of a contract by accepting or claiming benefits thereunder. 31 C.J.S. "Estoppel", §110, page 350. It goes without saying that one who claims benefits under a contract cannot contest its existence on the ground of non-delivery.

One party to a contract waives any possible right to insist on physical delivery as a condition precedent to existence of a contract when he commences to close the transaction before delivery has been made. Morton v. Witte, N.Y., 131 N.Y.S. 777.

So as to reduce the likelihood of this decree being misconstrued the court is not deciding whether or not either party has breached the subject contract. The court is simply deciding that a valid contract was entered into and each party should proceed to perform in accordance with its terms and conditions. It is accordingly ordered and decree as follows—

1. An executed copy of the agreement together with the deposit of $15,000 shall be left with the escrow agent as called for in the agreement.

2. Thereafter each party shall within fifteen days from the date hereof specifically perform the remaining obligations undertaken in the agreement which is the subject of this suit. The court will retain jurisdiction until twenty days have passed from the date hereof so that either party may petition the court between a date on or after the 16th day hereafter and a date not more than twenty days hereafter for appropriate relief if any dispute concerning proper performance of the contract arises and cannot be solved by the parties themselves. If no such petition is received during the aforementioned period, then this decree shall become the final order in this cause on the sixteenth day after its entry.

3. Costs are hereby taxed against the defendant.