Donald C. Meisgeier and Adelia M. Meisgeier v. Commissioner.
Meisgeier v. Commissioner
Docket No. 2053-69 SC.
United States Tax Court
T.C. Memo 1970-351; 1970 Tax Ct. Memo LEXIS 12; 29 T.C.M. (CCH) 1700; T.C.M. (RIA) 70351; December 24, 1970. Filed Wm. Stuart Charlton, 401 East Main St., Manchester, Iowa, for the petitioners. R. Burns Mossman, for the respondent. FAY
Memorandum Opinion FAY, Judge: Respondent determined a deficiency in petitioners' income tax for 1966 in the amount of $457.24. The issue to be decided is whether petitioners are entitled to characterize a gain on the sale of certain livestock under the provisions of section 1231[1] and consequently treat the income derived therefrom as capital gain. All of the facts have been stipulated, and the stipulation of facts, together with the exhibit attached thereto, is incorporated herein by this reference. During the taxable year 1966 petitioners maintained their residence in Manchester, Iowa, and filed a joint Federal income tax return for that year with the district director of internal revenue, Des Moines, Iowa. Adelia Meisgeier is a party to this action only by virtue of having filed a joint return and, therefore, Donald Meisgeier will hereafter be referred to as petitioner. *14 Petitioner during the taxable year 1966, and for an undetermined period prior thereto, engaged in farming in or around Manchester, Iowa. A portion of his farming activity involved the raising of hogs. Petitioner's hogs propagated in the normal course of nature and during May and June of 1965 sows in petitioner's herd produced 53 gilts. All 53 of the young sows were, from the time of birth, held for breeding purposes. At some time prior to January 10, 1966, petitioner's health commenced to deteriorate. Primarily for health reasons, coupled with the inability to hire competent help and a general desire to retire, petitioner decided to terminate his hog raising activities. On January 10, 1966, petitioner sold 12 of the 53 gilts involved herein and realized therefrom a gain of $727.80. On the following day, January 11, 1966, petitioner sold the remaining 41 gilts at public auction and realized therefrom a gain of $2,462.12. At the time of sale the gilts involved herein were all between 230 and 260 days old. In addition to the above sales petitioner sold all of his other livestock and since that time has limited his farming activities to the raising of grain. Petitioner, determining *15 that his gilts were held for breeding, found them to be "1231 property' [2] under section 1231(b)(3) and as such characterized the gain realized thereon as capital gain. Respondent, focusing on the requirement within section 1231(b)(3) that the livestock be held for 12 months prior to sale, determined that the gain realized is ordinary income and asserted the deficiency now in dispute. Petitioner's argument is apparently threefold. First, he contends that under section 1.1231-2(c), Example 2, Income Tax Regs., there is an exception created whereby young animals escape the 12-month holding period required by section 1231(b)(3). Second, he claims that this same portion of the regulation, together with a cited case, creates an exception to the 12-month holding period in a case where the taxpayer's entire livestock holdings are sold. Third and lastly, he asserts that the requirement of a 12-month holding period to bring livestock within the class of "1231 property" is unjustly discriminatory and thus *16 in violation of the Constitution. Section 1231[3] can be referred to as the capital gain-ordinary loss provision. This is because property deemed 1231 property by section 1231(b) can, via section 1231(a), be treated as capital gain if a gain is realized 1701 or as an ordinary loss should a loss result from a sale or other qualifying disposition. [4] In order to warrant this "best of both worlds" treatment, however, the property sold must fall within one of the provisions of section 1231(b). *17 Section 1231(b)(3) clearly states that livestock used for breeding and held for 12 months from the date of acquisition qualify as "1231 property." This Court in R. L. McMurtry, 29 T.C. 1091 (1958), affd. per curiam [59-1 USTC 9209] 262 F. 2d 589 (C.A. 5, 1959), held that to qualify as 1231 property under the livestock provision of section 117(j), Internal Revenue Code of 1939, [5] livestock had to be held for 12 months from the date of acquisition in addition to being held for breeding purposes. We think it obvious that there is a dual requirement called for by the statute. Petitioner does not contend otherwise but instead asserts that there is an exception implicit in the regulations promulgated under section 1231. He bases his theory in particular on section 1.1231-2(c), Example (2), Income Tax Regs., which reads as follows: Example (2). The taxpayer retires from the breeding or dairy business and sells his entire herd, including young animals which would have been used by him for breeding or dairy purposes if he *18 had remained in business. These young animals are considered as held for breeding or dairy purposes. The same would be true with respect to young animals which would have been used by the taxpayer for breeding or dairy purposes but which are sold by him in reduction of his breeding or dairy herd, because of, for example, drought. Petitioner concludes, first, that the import of this regulation is to create an exception to the 12-month holding period when young animals are sold, i.e., animals held for breeding but sold prior to reaching 12 months of age. Secondly, in the alternative he contends that this same example impliedly excepts from the holding period animals held for breeding for less than 12 months but sold as a part of an entire herd. [6]
We refuse to attribute to the example quoted above either meaning given it by petitioner. The regulation, as we read it, stands for no more than the proposition that should livestock *19 be held for breeding, but because of their youth are not actually bred prior to sale, they will still be considered livestock held for breeding purposes within section 1231(b)(3). It in no way obviates the necessity of holding the livestock for 12 months. Finally, petitioner makes an impassioned plea to this Court to find the holding period requirement for livestock to be unjustly discriminatory and in violation of the due process clause of the fifth amendment of the United States Constitution. The focus of his argument is on the discrepancy between the 6-month holding period generally required for property covered by section 1702 1231 and the 12-month period required for livestock. [7]
Basically it is petitioner's position that livestock raisers in general and he, a hog raiser, in particular, are unjustly discriminated against by a statute requiring that property the subject of their disposition be held a longer period than property disposed of by taxpayers in other endeavors; that to separate out and classify *20 the livestock industry more severely than other industries is a classification so grievously unfair as to constitute a violation of due process. The right to capital gain treatment exists as a matter of legislative grace. Congress could have provided that gain resulting from the sale of any property should be treated as ordinary income and taxed as such. McCoy v. Commissioner, 192 F. 2d 486 (C.A. 10, 1951), reversing 15 T.C. 828 (1950); Bidart Bros. v. United States, 262 F. 2d 607 (C.A. 9, 1959). For a taxing statute to constitute an unconstitutional exercise of Congress' legislative power, it is necessary that: [The] act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation but a confiscation of property, * * * or was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion. Brushaber v. Union Pac. R.R., 240 U.S. 1 (1916). Such is not the case with the legislation in question. Congress in enacting a 12-month holding period did so to assure that livestock be held a sufficient amount of time to *21 make easier the determination of the purpose for which they are held, i.e., for breeding, for dairy, or for sale. [8] That the provision pertaining to livestock required a holding period of 12 months instead of 6 as was required for other property, e.g., machinery, was a result of Congress' determination that the ambiguous nature of the purpose for which livestock is held required a longer time period. As is often the case with taxpayers who are adversely affected by tax legislation, petitioner questions the wisdom of the course chosen by Congress. He, in effect, argues that he believes that the length of time that his livestock are held bears an inadequate relationship to the purpose for which he holds them. At least, he contends, the relationship *22 is no different with respect to livestock than with respect to machinery. Petitioner looks through different eyes than the legislature and that he sees things differently is not a ground on which to render a statute unconstitutional. In a case such as this petitioner's recourse must be to the Congress, not to the courts. Having concluded that the statute is clearly constitutional and that no exception exists, we hold that the 53 gilts sold by petitioner during taxable year 1966, all of which were between 230 and 260 days old and obviously none of which had been held by petitioner for 12 months from the date of acquisition, were not livestock used in the trade or business within section 1231(b)(3). Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
2. The term "1231 property" is used herein to refer to property used in the trade or business for purposes of sec. 1231, I.R.C. 1954, as defined in sec. 1231(b)↩ set out fully infra.
3. Sec. 1231 provides in pertinent part: SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS. (a) General Rule. - If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * * (b) Definition of Property Used in the Trade or Business. - For purposes of this section - (1) General Rule. - The term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167, held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not - (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or (C) a copyright, literary, musical, or artistic composition, or similar property, held by a taxpayer described in paragraph (3) of section 1221. (2) Timber, Coal, or Domestic Iron Ore. - Such term includes timber, coal, and iron ore with respect to which section 631 applies. (3) Livestock. - Such term also includes livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by him for 12 months or more from the date of acquisition. Such term does not include poultry. ↩
4. This, of course, is vastly oversimplified in that it assumes that the property the subject loss transaction involving 1231 property and that the disposition is one described by sec. 1231(a)↩.
5. Sec. 117(j), I.R.C. 1939, is the predecessor to sec. 1231↩ and contained substantially identical language.
6. Stutzman v. United States, 72 F. Supp. 879↩ (N.D. Ind. 1947), is the only authority cited by petitioner. A careful reading of the case discloses that the decision therein did not involve a holding period provision or any exception to it.
7. This case is not affected by the amendment to sec. 1231(b)(3)↩ by the Tax Reform Act of 1969 extending the holding period for cattle and horses to 24 months.
8. As noted in footnote 7, supra, Congress, in the Tax Reform Act of 1969, saw fit to lengthen the holding period with respect to cattle and horses to 24 months. The reasons for this amendment were identical to those behind the initial 12-month requirement, i.e., that livestock must be held sufficiently long to determine the purpose for which they are held and in the case of cattle and horses 12 months had not proven long enough.↩