## WATSON et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12982.

United States Court of Appeals
Ninth Circuit.
May 29, 1952.

A. Calder Mackay, Arthur McGregor, Howard W. Reynolds, Adam Y. Bennion, Richard N. Mackay, Charles J. Higson, Los Angeles, Cal., for petitioners.

Ellis N. Slack, Acting Asst. Atty. Gen., Hilbert P. Zarky, Irving Axelrad, Sp. Assts. to the Atty. Gen., for respondent.

Before DENMAN, Chief Judge, and STEPHENS and BONE, Circuit Judges.

DENMAN, Chief Judge.

This case is here on a petition to review a decision of the Tax Court, 15 T.C. 800, that the Commissioner of Internal Revenue was correct in assessing a deficiency against the taxpayer, Watson, in respect of personal income taxes for the year 1944. The issue for our determination is to what extent the profit from a sale of an orange grove, consisting of land, trees and an unmatured crop of oranges, should be apportioned between ordinary income and capital gain. The Commissioner concedes that the profit attributable to the land and trees is capital gain, but contends that the profit attributable to the unmatured crop of oranges should be allocated to ordinary income. The taxpayer contends that she is entitled to the favorable capital gains treatment for her profit from the unmatured oranges under 26 U.S.C. § 117(j).

In 1944, the taxpayer owned a one-third, interest in an orange grove near Exeter, Tulare County. The property had been operated from January 1, 1942, under a partnership agreement with her two brothers who also owned one-third interests. About May or June of 1944, these owners listed their orange grove for sale with a local real estate agent; and the price eventually sought for this piece of property was $197,100. The buyer was first contacted in June, but he deferred a decision until the extent of the orange crop would be better known. On August 10, 1944, the contract for sale was entered into and the growing crop of immature oranges passed to the buyer along with the land. This crop consisted of navel oranges which bloom in the spring. During May and June, a considerable portion of the small fruit drops from the trees; and the oranges which remain on the trees do not mature until early November in the Exeter area. During the negotiations, the manager of the grove estimated the yield for that year would be 70,000 loose boxed. The Tax Court found that this constituted $40,000. of the $197,100 paid for the orange grove.

The pertinent portions of § 117(j) (1) are:

"For the purposes of this subsection, the term 'property used in the trade or business' means * * * real property used in the trade or business, held for more than 6 months, which is not * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

The taxpayer contends that the unmatured crop of oranges on the trees is not personal property but is a part of the realty. Assuming this to be correct, the burden of proof is on the taxpayer to show that such oranges were real property which was "held for more than 6 months" and which was not held "primarily for sale to customers in the ordinary course of her trade or business."

It is obvious that even though the oranges are real property vertically held above the ground, they nonetheless may be realty of a different character from the trees which sustain them and the ground which in turn sustains the trees. The analogy is a steel structure consisting of a large department store which a seller of real estate holds not for sale but for its rental as a permanent capital investment, but which also sustains ten stories of apartments, which are real property, and which the dealer holds primarily for sale of the fee interest in the individual apartments "to customers in the ordinary course of his trade or business" as a real estate dealer.

A further analogy is that of a real estate dealer, owner of a thousand acres of land which he rents for pasture as a capital investment, but in which he later sets apart a hundred acres for subdivision into lots which he holds for sale to customers in the ordinary course of his business. Cf. Rollingwood v. C. I. R., 9 Cir., 190 F.2d 263.

It is equally obvious that the *only* purpose of the taxpayer for the years prior to May 1944 in holding the portion of property which consisted of the crop was to sell the crop to her customers annually in a business of orange selling. We hence agree with the Tax Court's conclusion and holding that the oranges sold by petitioner and her brothers did not constitute real estate used by them in their trade or business which was not "not * * * (B) property held by [them] primarily for sale to customers in the ordinary course of [their] trade or business," and accordingly, the provisions of section 117(j) do not apply.

The situation is equally clear if the orange crop on the trees be regarded as personalty. The only purpose for which it is held is for sale to customers in the business of orange selling.

Since the purpose of capital gains relief is to avoid ordinary income taxation on the realization of values that have accumulated over a long period of time, we are re-enforced in our conclusion that the growing crop here is not entitled to the relief of § 117(j). The value of the crop is largely the product of effort within the tax year and the periodic realization of income from the crop covers a short period approximating the tax year. Rollingwood Corp. v. C.I.R., supra.

It is contended that in May 1944 the taxpayer ceased to hold the oranges for such sale to customers when she decided with the co-owners of the orchard to hold it with its crop for a unit sale—a holding of the orchard and crop for a sale not in the ordinary course of any business of the taxpayer. Assuming this decision to sell the property as a unit changed the character of the holding of the crop, § 117(j) (1) is not satisfied, for the crop was not held in the non-business sale character for the six months required by that section.

The Tenth Circuit in McCoy v. Commissioner, 192 F.2d 486 at 488, dealt with land sold with its immature crop of grain as a whole. It held that the profit of the sale of both crop and land constituted a capital gain. That court does not consider the contention that the annual grain crop though realty is a different kind of realty from the land on which it is grown. It cites but a portion of § 117(j) (1) "real property used in the trade or business, held for more than 6 months" omitting the words, "which is not * * * held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." There, as here with the orange crop, it is clear that the annual grain crop is "held" while growing for no other purpose than for sale to customers in the ordinary course of business.

Nor do we agree with the Tenth Circuit that its opinion is reinforced by § 323 of the Revenue Act of 1951 which amends § 117(j) to allow capital gains treatment for unmatured crops sold along with the land and trees to the same buyer. The legislation states that it applies to tax years after December 31, 1950, and the Senate Report accompanying the bill states that when the amendment is effective there will be an annual loss in taxes collected of $3,000,000. Here is a clear recognition that § 117(j) (1) prior to amendment is as interpreted by the Tax Court and this opinion.

In the Fifth Circuit, Owen v. Commissioner, 192 F.2d 1006, dealt with a Florida orange grove and treated the orange crop as appurtenant to the realty *when sold*. It reasoned that although the crop may have been held for sale in the course of trade or business up to a week before the day of the sale of the land with the crop on the trees, it is the character of the owner's holding on the day of sale which is determinative. Its language at page 1008 of 192 F.2d is:

"The fact that the fruit was potentially property held for sale in the ordinary course of business, and for that purpose could have been severed and separately sold by the taxpayer, does

not justify imposing a tax upon it in that status, when in fact no such transaction occurred. Taxation must follow the facts."

And at page 1009 of 192 F.2d:

"* * * it was not, *at the time of these sales*, (our emphasis) property held *primarily* for sale in the *ordinary* course of her business. We repeat, there was no sale of the fruit as personalty severed from the freehold."

Obviously, the last-quoted language ignores the requirement of § 117(j) (1) that the taxpayer must show that the crop was not held for a business sale but for a sale as a unit with the land "for more than six months."

The decision of the Tax Court is affirmed.