ENRIQUE GARCÍA DÍAZ, Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY, Defendant and Appellee.

No. R-63-228.          Decided November 17, 1964.

398

*Luis E. García Benítez* and *Juan A. Faría* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Enrique García Díaz held, under a lease agreement, two farms located in the district of Turabo of Caguas, Puerto Rico. By public instrument No. 213 of June 2, 1955, executed and notarized by Luis Morales Contreras, Mr. García Díaz, for a total price of $16,000 sold to Vicente Santos Ramos certain buildings, a water pump and approximately 32 cuerdas of sugarcane stalks on the farms, and rescinded his lease agreement.

In his income tax return for 1955, Mr. García Díaz determined his profit from the sale as follows:

| "Sales price | | $16,000.00 |
|---|---|---|
| Less:  Cost | | |
| 1. Buildings | $1,900 | |
| 2. Water pump | 231 | |
| 3. Sugarcane stalks | — | 2,131.20 |
| Profits | | $13,868.80 |
| *25% Capital Gain* | | 3,467.20" |

This profit includes the price for (a) the sugarcane stalks, and (b) compensation for the rescission of the lease agreement.

The Secretary of the Treasury notified the taxpayer of a deficiency in his income tax for 1955, denying the capital gain treatment with regard to the sale and ruling that all of the $13,868.80 "profit" was ordinary income of the taxpayer.

After the Secretary's final determination the taxpayer filed an appeal with the Superior Court, San Juan Part. During the trial the taxpayer offered to furnish evidence concerning that part of the sales price corresponding to the sugarcane stalks and that part corresponding to the rescission of the lease agreement. The court denied admission of the evidence on the ground that it would tend to change the terms of a written agreement. Subsequently, the court rendered an amended judgment deciding, as far as is pertinent here, the following:

"From the $16,000 sale price the taxpayer declared as a profit the sum of $13,868 after deducting $2,131, which represents the cost of the building ($1,900) and the cost of the water pump ($231).

"Should the tax be levied on all of the $13,868 profit, or on only 25% of the $13,868 as capital gains?

"Until 1954 the taxpayer claimed the total cost of the stalks.

"Included in the $13,868 profit is the price or consideration given in the sale for the rescission of the lease agreement and for the option of a five-year extension. In his return the taxpayer showed the $13,868 sum as profit from the sale of capital assets (equipment, stalks, etc.) held for a long term. Therefore, profits cannot be exclusively determined with regard to the sugarcane stalks when the sales price includes the sugarcane plantation, a ranch, a water pump, a frame house, a stable and the *rescission of the lease agreement.*

"*Therefore, the value of the plantations and the value to be granted to the rescission of the lease agreement shall be determined* in view of the profits, if any, that the taxpayer

derived from the farm, and his investment in the plantation, for the preceding years. *The profits attributed to the rescission shall be considered capital gains, and the profits attributed to the plantation shall be considered ordinary income.* [Italics ours.]

".     .     .     .     .     .     .     .

"Once this determination is made, the tax to be paid by the taxpayer can be determined."

The judgment was rendered on May 16, 1963. On June 4 or 5 of that year the Secretary of the Treasury notified the taxpayer that, according to the terms of the order issued by the Superior Court, he had determined the taxpayer's net income and computed the tax to be paid. On the 7th of the same month, the Secretary of the Treasury submitted the tax computations for the approval of the Superior Court. The taxpayer objected to the computations. He contended that the Secretary, without giving the taxpayer an opportunity to be heard regarding the valuation, made an ex parte determination of the value of the sugarcane stalks and the rescission of the lease agreement. As a consequence, the taxpayer requested a hearing to be held to receive evidence on such matters so a judicial determination on the value of the sugarcane stalks and the rescission of the lease agreement could be made.

The Court held a hearing to approve the aforementioned computations, but did not allow the introduction of evidence for the reasons stated in an order which, in part, provides:

"In view of the judgment rendered and in order to administer justice an opportunity was given to the parties to determine the value of the rescission of the lease. The appellee, in accordance with the judgment, gave an $8,753.86 value to the rescission of the contract. The taxpayer did not try administratively to furnish data or evidence to the Secretary in order for the appellee to make his determination regarding this matter.

"What he intends to do at this stage of the proceedings shall not be done. The hearing regarding the computation shall be limited to a mathematical controversy. *Reyes* v. *Secretary of the Treasury*, judgment rendered March 9, 1962, Case 12886 and 12564.

"The tax computations are approved."

■ The taxpayer contends that the Court erred in deciding that the amount realized in the sale of the sugarcane stalks shall be considered as ordinary income of the taxpayer instead of as income from the sale of a capital asset.

We think that this contention was decided against the taxpayer in *Reyes* v. *Secretary of the Treasury*, 84 P.R.R. 574 (1962), when we stated in footnote 6:

"In Puerto Rico, under the legislation of 1924 as well as that of 1954, the benefit obtained in the disposal of pending crops is considered as ordinary income. Articles 76, 110 and 121 of the Regulations of 1924 (English ed.), pp. 53, 73 and 79. The same solution prevailed in federal jurisdiction until the enactment in 1951 of an amendment to § 117(j)(1) of the Internal Revenue Act of 1939, *Watson* v. *Commissioner*, 345 U.S. 544 (1953), 197 F.2d 56 (C.A. 9, 1952); *cf. McCoy* v. *Commissioner*, 192 F.2d 486 (C.A. 10, 1951), by which the benefit of declaring the gains obtained as if it were a disposition of capital assets, was granted, under certain conditions, in cases of pending crops. See Dakin, *The Capital Gains Treasure Chest: Rational Extension or Expedient Distortion*, 14 La. L. Rev. 505 (1959); *Farmers and The Federal Income Tax*, 19 U. Chi. L. Rev. 522, 532–33 (1952); *Ordinary Income or Capital Gain in the Sale of an Orange Grove*, 4 Miami L. Q. 145 (1950). Upon adopting locally in 1954 the provisions of the Federal Act of 1939, those sections were omitted which permit a special relief to certain types of taxpayers—sales of forests, cattle, and pending crops. See § 117(g) of the Income Tax Act of 1954, 13 L.P.R.A. § 3117, and § 117(j)-1 of the Regulations, 13 R.&R.P.R. § 3117–1. In general, see 3B Mertens, Law of Federal Income Taxation (rev. Zimmet and Weiss), §§ 22.123, 22.131 and vol. 3A, §§ 21.255 and 21.256. It befits the Legislative Assembly to determine whether or not the situation of the

Puerto Rican cattle raising and agricultural industries require the stimulus which such a measure represents."

We also agree with the following contentions of the Secretary of the Treasury:

"Even federal courts, where capital gain benefits are granted, have, under certain conditions, decided that the profits obtained from the sale of growing crops, when the land is not the property of the taxpayer but held by him under a lease, are ordinary income. See *Bidart Bros.* v. *United States*, 262 F.2d 607, *cert. den.*, 359 U.S. 1003.

"There is another reason for considering the profits obtained in the case at issue as ordinary income. The taxpayer did not claim, in his income tax return for the year in controversy, any cost for the sugarcane stalks. This is logical since this amount was claimed by him in the year incurred as the cost of operation. Therefore, when selling, the basis or cost of the stalks is nil and the total amount received from the sale was income, as there was no cost to be applied."

However, we think that the Superior Court should have made its own determination as to the value of the rescission of the lease agreement. Therefore, the parties should have been granted an opportunity to furnish evidence in this respect. When the taxpayer tried to do this in the trial, the admission of the evidence was denied under the *parol evidence rule* (§ 25, Law of Evidence, 32 L.P.R.A. § 1668).[1]

■ Correct or not the decision of the court on inadmissibility of evidence, based on § 25 of the Law of Evidence,

---

[1] The rule excluding extrinsic evidence objecting to or varying the terms of a written agreement is applicable to the parties, or to their representatives or successors in interest. Here the action is between one of the parties to the agreement and the Secretary of the Treasury, a third party who was not party or coparty to the agreement. Section 25, Law of Evidence; *Nicorelli* v. *Ernesto López & Co.*, 26 P.R.R. 49 (1917); *Heirs of Marrero* v. *Santiago*, 74 P.R.R. 763 (1953); *Polanco* v. *Ruiz*, 55 P.R.R. 758 (1935). On the other hand, we cannot see how the evidence on the separate price of the sugar stalks and the rescission of the agreement may vary the sales deed, where a total price is assigned to both items. *Cf. Polanco* v. *Ruiz, supra.*

there. is no legal provision preventing the court from receiving evidence, if not on the separate price agreed upon by the parties on the sugarcane stalks and the rescission of the lease, at least on the value of each item. As a consequence, the court in rendering its judgment that the income received for the rescission of the lease agreement was a capital gain was unable, for lack of evidence, to determine the amount of such income.

■ For such reason the judgment merely says: ". . . the value of the plantations and the value to be granted to the rescission should therefore be determined."

How and by whom was that determination made? It was made by the Secretary of the Treasury without hearing the taxpayer and was stated in the computations reported to the court. At this stage the taxpayer, who had objected in writing to the computations, tried once again to furnish evidence on the value of the rescission of the agreement, but was not allowed under *Reyes* v. *Secretary of the Treasury, supra,* which held that a hearing for approval of computations is limited to a mathematical controversy. Even though this is the correct doctrine,[2] the court could, in such a case, in order to decide the controversy regarding the value of the rescission agreement, set aside the judgment, admit the evidence and, after. rendering a decision, order the filing of the new computations.

For the reasons stated above, the judgment rendered by the Superior Court shall be set aside and a new hearing before that court shall be held for the sole purpose of receiving pertinent evidence on the value of the sugarcane stalks and the rescission of the lease agreement, with the subsequent proceeding of law.

---

[2] However, see, *Central Roig Refining Co.* v. *Secretary of the Treasury*, per curiam decision of April 14, 1961.